100 Ill. App.3d 624 (1981)
427 N.E.2d 201
THE PEOPLE OF COOK COUNTY ex rel. BERNARD CAREY, State's Attorney, et al., Plaintiffs-Appellees,
v.
STARVIEW DRIVE-IN THEATRE, INC., Defendant-Appellant.
No. 80-1538.
Illinois Appellate Court  First District (2nd Division).
Opinion filed September 8, 1981.
Rehearing denied September 24, 1981.
*625 L. Robert Artoe, of Chicago, for appellant.
Richard M. Daley, State's Attorney, of Chicago (Jane Clark Casey and John A. Dienner, III, Assistant State's Attorneys, of counsel), for appellees.
Affirmed in part and reversed in part.
Mr. JUSTICE PERLIN delivered the opinion of the court:
This appeal challenges the facial validity of certain provisions of the Cook County Outdoor Movie Theater Ordinance (Cook County Ordinances 1978, chs. 14-47 et seq., as amended), which requires the licensing of all outdoor movie theaters in unincorporated Cook County.[1] Under section 14-53.(3) of the ordinance (Cook County Ordinances 1979, § 14-53.(3)), "every applicant for a license shall covenant and agree * * *:
To desist from exhibiting any motion picture or film presentation viewable from any private residence or any public street or walkway which contains any scene or scenes depicting any of the following sexually explicit nudity:
(A) Sexual intercourse, masturbation or oral copulation;
(B) Touching, caressing or fondling of the bare female breast or bare male or female buttocks, anus, or genitals;
(C) Erect male genitalia or male ejaculation."
*626 The State's Attorney of Cook County filed an action in the circuit court seeking a declaratory judgment (Ill. Rev. Stat. 1979, ch. 110, par. 57.1) that the ordinance is constitutional and an injunction barring defendant, Starview Drive-In Theatre, Inc. (Starview), from operating without a license.[2] Subsequent to the filing of the complaint, Starview applied for and received a license to operate as an outdoor theater, thereby rendering moot the State's Attorney's prayer for injunctive relief. The issues relating to the constitutionality of the ordinance were briefed and argued by the parties. On May 23, 1980, the trial court ruled that the ordinance is constitutional, from which judgment Starview appeals.
For the reasons hereinafter stated, we hold that clauses (A) and (C) of section 14-53.(3) of the Cook County Outdoor Movie Theater Ordinance are constitutional. We hold further that clause (B) is constitutional insofar as it applies to the exhibition of films that are viewable from "any private residence"; clause (B) is unconstitutional to the extent it restricts the exhibition of films that are viewable only from "any public street or walkway."[3]
*627 Before addressing the merits of the parties' contentions, we must dispose of certain motions which were taken with the case. Starview has moved to strike appendix A and appendix B of the State's Attorney's brief.
 1 Appendix A (see footnote 3, below) consists of the decision of the hearing officer who presided at the license revocation proceedings brought against Starview for violation of the ordinance provision here in question. Starview asserts that the decision is not relevant or material to any issue in this appeal. We disagree. The decision is germane because it reveals that the theater is exhibiting films containing scenes of "sexually explicit nudity," as that term is defined in the ordinance, and proves that such films are viewable from private residences and public highways. We may take judicial notice of an administrative decision even though it is subject to further administrative and judicial review. (Rasky v. Anderson (1978), 62 Ill. App.3d 633, 636-37, 379 N.E.2d 1; United States v. An Undetermined Quantity (7th Cir.1978), 583 F.2d 942, 946 n. 3.) Starview's motion to strike appendix A from the State's Attorney's brief is denied.
 2 Appendix B is an affidavit of Robert Napora, a Cook County sheriff's police investigator. The affidavit, which was attached to a memorandum of law which the State's Attorney filed with the trial court on February 11, 1980, reports Napora's detailed observations of two films presented at the Starview theater on July 21, 1978. The films included scenes of sexually explicit nudity and were viewable "from Routes 59 and 20 and from nearby private residences." Starview contends that Napora's affidavit contains "highly prejudicial" material not relevant to this appeal and was based on observations made before the present corporate owner came into possession of the theater. Starview, however, did not object to the exhibit when it was submitted to the trial court, did not move to strike it *628 or offer counteraffidavits. Starview's present motion to strike the affidavit is untimely and is denied.
As an alternative to its motion to strike appendix A and appendix B, Starview has moved to file a copy of Investigator Napora's testimony given in September 1980 before the Cook County Board of Commissioners, which was four months after the trial court upheld the ordinance on May 2, 1980. In his testimony before the County Board, Napora stated that as of June 16, 1980, the screen of the Starview theater could be seen from only one location outside the theater. From that location Napora was able to discern that there was a picture on the screen. Napora observed colors and movement but he could not make out a specific shape or form.
 3 We cannot take judicial notice of Napora's testimony before the County Board unless Starview was offering it to prove that the issues in this appeal have become moot subsequent to the trial court's judgment because no scenes of sexually explicit nudity are now viewable from outside the theater. (See Bluthardt v. Breslin (1979), 74 Ill.2d 246, 250, 384 N.E.2d 1309.)[4] Starview, however, has not asked that this appeal be dismissed on grounds of mootness. In the absence of an allegation of mootness, judicial notice cannot be extended to permit the introduction of new factual evidence not presented to the trial court. (Ashland Savings & Loan Association v. Aetna Insurance Co. (1974), 18 Ill. App.3d 70, 78, 309 N.E.2d 293.) We therefore deny Starview's motion to file a copy of Investigator Napora's testimony.
We now reach the merits of this cause. Starview maintains that section 14-53.(3) of the Cook County Outdoor Movie Theater Ordinance is unconstitutional because it imposes an impermissible prior restraint on materials protected by the first amendment and because it discriminates on the basis of a film's content in violation of the equal protection clause of the fourteenth amendment. Motion pictures, of course, constitute a form of expression entitled to protection under both the first and the fourteenth amendments to the United States Constitution. Jenkins v. Georgia (1974), 418 U.S. 153, 41 L.Ed.2d 642, 94 S.Ct. 2750; Joseph Burstyn, Inc. v. Wilson (1952), 343 U.S. 495, 502, 96 L.Ed. 1098, 1106, 72 S.Ct. 777, 780-81.
*629 Under the Cook County Outdoor Movie Theater Ordinance, films that depict scenes of "sexually explicit nudity" may not be exhibited if the films are "viewable from any private residence or any public street or walkway." The county does not dispute that the definition in the ordinance of "sexually explicit nudity" satisfies neither the minimum Federal constitutional standards for obscenity enunciated in Miller v. California (1973), 413 U.S. 15, 37 L.Ed.2d 419, 93 S.Ct. 2607, nor the more stringent requirements imposed by section 11-20 of the Illinois Criminal Code (Ill. Rev. Stat. 1979, ch. 38, par. 11-20) as that section has been interpreted by our supreme court. (See People v. Ridens (1974), 59 Ill.2d 362, 372-73, 321 N.E.2d 264, where the supreme court retained the stricter "redeeming social value" obscenity criterion announced in Memoirs v. Massachusetts (1966), 383 U.S. 413, 16 L.Ed.2d 1, 86 S.Ct. 975.)[5] It is apparent, therefore, that if the ordinance had attempted to ban the exhibition of all movies that contain scenes of "sexually explicit nudity," it would not pass constitutional muster. The ordinance, however, does not reach that far.
Films containing the scenes defined in the ordinance are prohibited only if they are "viewable from any private residence or any public street or walkway." Thus, the initial constitutional question raised by this ordinance is whether the county may use a film's contents as the basis for imposing regulations that fall short of complete suppression. Relying principally on Police Department v. Mosley (1972), 408 U.S. 92, 33 L.Ed.2d 212, 92 S.Ct. 2286, Starview asserts that such content-based discrimination is never permissible.
In Mosley, the Supreme Court struck down a Chicago city ordinance that prohibited all peaceful picketing in the vicinity of a school except peaceful labor picketing. "The central problem with Chicago's ordinance," according to the court, "is that it describes permissible picketing in terms of its subject matter." (408 U.S. 92, 95, 33 L.Ed.2d 212, 216, 92 S.Ct. 2286, 2290.)
"But, above all else, the First Amendment means that government has no power to restrict expression because of its message, its ideas, its subject matter, or its content. [Citations.] To permit the continued building of our politics and culture, and to assure self-fulfillment for each individual, our people are guaranteed the right to express any thought, free from government censorship. The essence of this forbidden censorship is content control. Any restriction on expressive activity because of its content would *630 completely undercut the `profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide-open.' New York Times Co. v. Sullivan, supra, [376 U.S. 254] at 270.
Necessarily, then, under the Equal Protection Clause, not to mention the First Amendment itself, government may not grant the use of a forum to people whose views it finds acceptable, but deny use to those wishing to express less favored or more controversial views. And it may not select which issues are worth discussing or debating in public facilities. There is an `equality of status in the field of ideas,' and government must afford all points of view an equal opportunity to be heard. Once a forum is opened up to assembly or speaking by some groups, government may not prohibit others from assembling or speaking on the basis of what they intend to say. Selective exclusions from a public forum may not be based * * * by reference to content alone." 408 U.S. 92, 95-96, 33 L.Ed.2d 212, 216-17, 92 S.Ct. 2286, 2290.[6]
In Young v. American Mini Theatres, Inc. (1976), 427 U.S. 50, 65-66, 49 L.Ed.2d 310, 323-24, 96 S.Ct. 2440, 2449-50, however, Mr. Justice Stevens, writing for a plurality of the Court, observed:
"This statement, [from Mosley] and others to the same effect, read literally and without regard for the facts of the case in which it was made, would absolutely preclude any regulation of expressive activity predicated in whole or in part on the content of the communication. But we learned long ago that broad statements of *631 principle, no matter how correct in the context in which they are made, are sometimes qualified by contrary decisions before the absolute limit of the stated principle is reached. When we review this Court's actual adjudications in the First Amendment area, we find this to have been the case with the stated principle that there may be no restriction whatever on expressive activity because of its content."
Justice Stevens then surveyed those Supreme Court decisions which have held that neither the first amendment nor the equal protection clause prevents the State from prohibiting incitements to crime or violence, "fighting comments," publication of sensitive military data in time of war, libel, or obscenity. Starview does not quarrel with these decisions but contends that since films depicting scenes of sexually explicit nudity do not fall within any of the classifications of speech that may be prohibited entirely (e.g., obscenity), such films may not be regulated either.[7]Young rejected this conclusion.
At issue in Young was the constitutionality of two Detroit zoning ordinances that dispersed the location of "adult" motion picture theaters. The classification of a theater as "adult" was expressly predicated on the character of the motion pictures which the theater exhibited. If the theater was used to present "material distinguished or characterized by an emphasis on matter depicting, describing or relating to `Specified Sexual Activities' or `Specified Anatomical Areas,'" it was an adult establishment. (427 U.S. 50, 53, 49 L.Ed.2d 310, 316, 96 S.Ct. 2440, 2444.) The definitions of these terms encompassed more than that which could be banned as obscene under Miller v. California (1973), 413 U.S. 15, 37 L.Ed.2d 419, 93 S.Ct. 2607. Nevertheless, "even though we recognize that the First Amendment will not tolerate the total suppression of erotic materials that have some arguably artistic value," "the State may legitimately use the contents of these materials as the basis for placing them in a different classification from other motion pictures." 427 U.S. 50, 70-71, 49 L.Ed.2d 310, 326, 96 S.Ct. 2440, 2452.[8]
 4 We hold that the Cook County Outdoor Movie Theater Ordinance is not unconstitutional solely because the regulations are based on the *632 content of communication protected from total suppression by the first amendment.[9]
In Young, the Supreme Court found that the line drawn by the ordinances imposed only a minimal burden on protected speech and was justified by Detroit's interest in preserving the character of its neighborhoods. The potential burdens to protected speech are more substantial here than in Young because an outdoor theater owner desiring to present films containing sexually explicit nudity may have to expend substantial sums of money to comply with the restrictions of the ordinance. (See, e.g., Olympic Drive-In Theatre, Inc. v. City of Pagedale (Mo. 1969), 441 S.W.2d 5, 8.) The theater's only alternative to incurring these additional costs is to avoid showing these movies. The ordinance thus has the effect of deterring outdoor theaters from exhibiting films containing scenes of sexually explicit nudity. "Such a deterrent, although it might not result in total suppression of these movies, is a restraint on free expression." (Erznoznik v. City of Jacksonville (1975), 422 U.S. 205, 211 n. 8, 45 L.Ed.2d 125, 132 n. 8, 95 S.Ct. 2268, 2274 n. 8.) Thus, we consider whether such a restraint is constitutional.
Both Starview and the State's Attorney have characterized the Cook County Outdoor Movie Theater Ordinance as a system of prior restraints. If this characterization is accurate, then the ordinance is presumptively invalid. (Bantam Books v. Sullivan (1963), 372 U.S. 58, 70, 9 L.Ed.2d 584, 593, 83 S.Ct. 631, 639.) Neither party, however, defines "prior restraint" or attempts to explain why prior restraint principles should be applied to this ordinance.
A "prior restraint" has been succinctly defined as "any restraint of future expression because of the content of either past or anticipated future expression * * *." (Cornflower Entertainment, Inc. v. Salt Lake City Corp. (D. Utah 1980), 485 F. Supp. 777, 781.) According to this definition, the Cook County Outdoor Movie Theater Ordinance may be described as a "prior restraint." In applying for a license, an outdoor theater owner must agree to comply with certain specific conditions imposed by the ordinance relating to the exhibition of films containing *633 scenes of "sexually explicit nudity." His license may be revoked for violation of those conditions. But regardless of whether section 14-53. (3) of the ordinance falls within this or any other abstract definition of "prior restraints,"[10] it is apparent that section 14-53.(3) shares none of the vices commonly associated with prior restraints previously held invalid by the United States Supreme Court.
The ordinance does not establish a scheme of discretionary administrative censorship under which films must be submitted to a censor before they may be exhibited. Thus, the many Supreme Court cases which have struck down such censorship systems because of their overbroad delegation, potential for abuse, and lack of adequate procedural safeguards for review of the censor's decision are inapplicable. See, e.g., Freedman v. Maryland (1965), 380 U.S. 51, 13 L.Ed.2d 649, 85 S.Ct. 734, and Joseph Burstyn, Inc. v. Wilson (1952), 343 U.S. 495, 96 L.Ed. 1098, 72 S.Ct. 777 (movies); Bantam Books, Inc. v. Sullivan (1963), 372 U.S. 58, 9 L.Ed.2d 584, 83 S.Ct. 631 (books); Blount v. Rizzi (1971), 400 U.S. 410, 27 L.Ed.2d 498, 91 S.Ct. 423 (mail); Southeastern Promotions, Ltd. v. Conrad (1975), 420 U.S. 546, 43 L.Ed.2d 448, 95 S.Ct. 1239 (plays).
Nor does the ordinance authorize an injunction against the exhibition of any particular film, enforceable through a contempt proceeding. The principal vice of this form of prior restraint is that, in a contempt hearing, a person may lose the right to assert the defense that his communication was protected by the first amendment. (Vance v. Universal Amusement Co. (1980), 445 U.S. 308, 63 L.Ed.2d 413, 100 S.Ct. 1156; Walker v. City of Birmingham (1967), 388 U.S. 307, 18 L.Ed.2d 1210, 87 S.Ct. 12.) That possibility does not exist here. In any proceeding to revoke a license or to enjoin a theater from operating without one, the theater owner may raise the defense that the ordinance is void on its face because it is unconstitutionally overbroad or impermissibly vague or both. Shuttlesworth v. Birmingham (1969), 394 U.S. 147, 22 L.Ed.2d 162, 89 S.Ct. 935; Staub v. City of Baxley (1958), 355 U.S. 313, 2 L.Ed.2d 302, 78 S.Ct. 277; Lovell v. Griffin (1938), 303 U.S. 444, 82 L.Ed. 949, 58 S.Ct. 666.
 5 We believe that the Cook County Outdoor Movie Theater Ordinance may be classified as a legislative prior restraint. This form of prior restraint, however, does not possess any of the objectionable features of executive or judicial prior restraints and should not be subject to the same scrutiny:
"In the legislative form of prior restraint, somewhat different factors pertain. Here no individual discretion is involved. The *634 control may operate to prevent expression, but most of the abuses arising out of intimate government inspection and supervision of communication are absent. Under such circumstances, the strict rule of prior restraint should not apply. Hence the validity under the First Amendment turns upon the same sort of considerations as in subsequent punishment cases, with the element of preventive control operating as an additional, but not conclusive, factor." T. Emerson, The Doctrine of Prior Restraint, 20 Law & Contemp. Prob. 648, 671 (1955).
We do not believe that the usual heavy presumption of invalidity with which prior restraints are burdened is entitled to much weight in reviewing this ordinance. Nevertheless, as in Erznoznik, the ordinance does constitute "a restraint on free expression." (422 U.S. 205, 211 n. 8, 45 L.Ed.2d 125, 132 n. 8, 95 S.Ct. 2268, 2274 n. 8.) The State's Attorney contends that this restraint may be sustained as a reasonable exercise of the county's police power to protect the right of privacy of nearby residents from whose homes the films are viewable, and to regulate expression where the well-being of its children is at stake.
With respect to the first interest, the Supreme Court has repeatedly held that "[a] State or municipality may protect individual privacy by enacting reasonable time, place, and manner regulations applicable to all speech irrespective of content. [Citations.]" (Erznoznik v. City of Jacksonville (1975), 422 U.S. 205, 209, 45 L.Ed.2d 125, 130, 95 S.Ct. 2268, 2272.)
"But when the government, acting as censor, undertakes selectively to shield the public from some kinds of speech on the ground that they are more offensive than others, the First Amendment strictly limits its power. [Citations.] Such selective restrictions have been upheld only when the speaker intrudes on the privacy of the home, see Rowan v. Post Office Dept., 397 U.S. 728 (1970), or the degree of captivity makes it impractical for the unwilling viewer or auditor to avoid exposure. [Citation.]" 422 U.S. 205, 209, 45 L.Ed.2d 125, 130-31, 95 S.Ct. 2268, 2272.
In Rowan v. United States Post Office Department (1970), 397 U.S. 728, 25 L.Ed.2d 736, 90 S.Ct. 1484, the Supreme Court upheld a Federal statute that permits a person receiving a "pandering advertisement" which he believes to be "erotically arousing or sexually provocative" to instruct the Postmaster General to inform the sender that such mail is not to be sent in the future. "* * * [T]he mailer's right to communicate is circumscribed only by an affirmative act of the addressee giving notice that he wishes no further mailings from that mailer." (397 U.S. 728, 737, 25 L.Ed.2d 736, 743, 90 S.Ct. 1484, 1490.) Particularly appropos of the issue here are the court's following remarks:

*635 "To hold less would tend to license a form of trespass and would make hardly more sense than to say that a radio or television viewer may not twist the dial to cut off an offensive or boring communication and thus bar its entering his home. Nothing in the Constitution compels us to listen or to view any unwanted communication, whatever its merit; * * *." 397 U.S. 728, 737, 25 L.Ed.2d 736, 743, 90 S.Ct. 1484, 1490.
 6 In our judgment, the Supreme Court's opinion in Rowan clearly justifies that part of the county ordinance which forbids a licensee from projecting onto a vast screen[11] scenes portraying sexual intercourse and other sexually explicit nudity if such scenes are "viewable from any private residence." "That we are often `captives' outside the sanctuary of the home and subject to objectionable speech and other sound does not mean we must be captives everywhere." 397 U.S. 728, 738, 25 L.Ed.2d 736, 744, 90 S.Ct. 1484, 1491.[12]
Without the protection afforded by the ordinance, a homeowner who objects to what he regards as obnoxious and offensive scenes of sexually explicit nudity is powerless to prevent these scenes from being beamed into the privacy of his living room where they may disturb the tranquility of his home and interfere with the raising of his children. (See, in this regard, Prince v. Massachusetts (1944), 321 U.S. 158, 88 L.Ed. 645, 64 S.Ct. 438.) Criminal prosecution under the obscenity provisions of the Criminal Code may not be possible because the films, taken as a whole, may not be obscene.[13] Even as to films that are ultimately found to be obscene, criminal prosecution cannot undo the damage already done to the sensibilities of unwilling viewers. "* * * `[E]xposure to [erotic material] is for some persons an intense emotional experience. A communication of this nature, imposed upon a person contrary to his wishes, has all the characteristics of a physical assault * * * [and it] constitutes an invasion of his privacy * * *.'" T. Emerson, The System of Freedom of Expression 496 (1970), quoted in Paris Adult Theatre I v. Slaton (1973), 413 U.S. 49, 106-07, 37 L.Ed.2d 446, 486, 93 S.Ct. 2628, 2659 (Brennan, J., dissenting).
Nor does the law of public nuisance offer an alternative remedy to residents whose privacy has been invaded. Although the regulations of the *636 ordinance are not limited to the standards of obscenity set forth in Miller v. California, not even obscenity itself can be abated as a public nuisance under section 1 of "An Act regarding places used for purposes of lewdness, assignation, or prostitution * * *." (Ill. Rev. Stat. 1979, ch. 100 1/2, par. 1; People ex rel. Difanis v. Futia (1978), 56 Ill. App.3d 920, 926-27, 373 N.E.2d 530; People v. Goldman (1972), 7 Ill. App.3d 253, 254-56, 287 N.E.2d 177; see also People v. Movies, Inc. (1971), 49 Ill.2d 85, 87, 273 N.E.2d 366 (dicta).) Moreover, it has been held that the presentation of obscene films at an outdoor theater may not be enjoined as a common law public nuisance where the alleged injury is not to the public generally but only to the right of privacy of a few nearby residents from whose homes the films are visible. People ex rel. Carey v. Route 53 Drive-In (1976), 45 Ill. App.3d 81, 83-84, 358 N.E.2d 1298.[14]
In our opinion, the Cook County Outdoor Movie Theater Ordinance represents a conscientious and constitutional effort by the County Board to protect the right of persons in their own homes to be free from the visual onslaught of offensive sexual materials.
That brings us to the portion of the ordinance which prohibits the exhibition of sexually explicit nudity "viewable from * * * any public street or walkway." The principal Supreme Court case in this area is Erznoznik v. City of Jacksonville (1975), 422 U.S. 205, 45 L.Ed.2d 125, 95 S.Ct. 2268.
Erznoznik concerned the validity of a Jacksonville, Florida, ordinance that banned drive-in theaters from showing films in which "the human male or female bare buttocks, human female bare breasts, or human bare pubic areas are shown" if such films were "visible from any public street or public place." (422 U.S. 205, 207, 45 L.Ed.2d 125, 129, 95 S.Ct. 2268, 2271.) The court found that the city's interest in preventing significant intrusions on privacy did not justify the ordinance because it "seeks only to keep these films from being seen from public streets and places where the offended viewer readily can avert his eyes." (422 U.S. 205, 212, 45 L.Ed.2d 125, 132, 95 S.Ct. 2268, 2274.)[15] The court also rejected Jacksonville's alternative theory that the ordinance was a valid exercise of the city's police power to protect its children. While the court *637 agreed that under its prior rulings, e.g., Ginsberg v. New York (1968), 390 U.S. 629, 20 L.Ed.2d 195, 88 S.Ct. 1274, a State or municipality can adopt more stringent controls on communicative materials available to youth than on those available to adults, it found that the ordinance in question was broader than permissible:
"The ordinance is not directed against sexually explicit nudity, nor is it otherwise limited. Rather, it sweepingly forbids display of all films containing any uncovered buttocks or breasts, irrespective of context or pervasiveness. Thus it would bar a film containing a picture of a baby's buttocks, the nude body of a war victim, or scenes from a culture in which nudity is indigenous. The ordinance also might prohibit newsreel scenes of the opening of an art exhibit as well as shots of bathers on a beach. Clearly all nudity cannot be deemed obscene even as to minors. See Ginsberg v. New York, supra. Nor can such a broad restriction be justified by any other governmental interest pertaining to minors. Speech that is neither obscene as to youths nor subject to some other legitimate proscription cannot be suppressed solely to protect the young from ideas or images that a legislative body thinks unsuitable for them." (Emphasis added.) 422 U.S. 205, 213-14, 45 L.Ed.2d 125, 133, 95 S.Ct. 2268, 2274-75.
The court noted that "[t]he only narrowing construction which occurs to us would be to limit the ordinance to movies that are obscene as to minors" (422 U.S. 205, 216 n. 15, 45 L.Ed.2d 125, 135 n. 15, 95 S.Ct. 2268, 2276 n. 15), but found that the Jacksonville ordinance was not susceptible of such a limiting construction and held the ordinance unconstitutional.
 7 With respect to minors, what is obscene? Erznoznik made clear that "under any test of obscenity as to minors not all nudity would be proscribed. Rather, to be obscene `such expression must be, in some significant way, erotic.' Cohen v. California, 403 U.S. 15, 20 (1971). See Paris Adult Theatre I v. Slaton, 413 U.S. 49, 106-107 (1973) (Brennan, J., dissenting)." 422 U.S. 205, 213 n. 10, 45 L.Ed.2d 125, 133 n. 10, 95 S.Ct. 2268, 2275 n. 10.
We experience no difficulty in holding that scenes depicting sexual intercourse, masturbation or oral copulation (§ 14-53.(3), cl. (A)) or erect male genitalia or male ejaculation (cl. (C)) are erotic. Such scenes constitute the type of "sexually explicit nudity" which Erznoznik suggested could be prohibited (as to minors) by a properly drawn ordinance.[16] And *638 we reject Starview's interpretation of Erznoznik that scenes of "sexually explicit nudity" cannot be prohibited without regard for their context or pervasiveness. As we interpret the court's opinion, sexually explicit nudity is inherently erotic and may be proscribed. Nudity alone is not necessarily erotic and cannot be banned, even as to minors, without considering the context in which the nudity appears and its pervasiveness throughout a movie. We do not believe, however, that every scene described in clause (B) or the ordinance ("[t]ouching, caressing, or fondling of the bare female breast or bare male or female buttocks, anus, or genitals") is necessarily erotic.
 8 Clause (B) would prohibit scenes of a mother breastfeeding or bathing her baby, or of a parent lovingly caressing an infant. It would also prohibit the presentation of films in which breast self-examination techniques are demonstrated. Many other examples of nonerotic scenes falling within the scope of clause (B) suggest themselves. We find that clause (B) is overbroad. Moreover, we do not believe a narrowing construction of this clause is possible without either rewriting the ordinance or substituting an impermissibly vague standard (e.g., any "lewd" touching, caressing or fondling) for one which is clear and specific but overbroad. We hold, therefore, that clause (B) is unconstitutional to the extent it restricts the exhibition of films that are viewable only from "any public street or walkway." This holding, however, does not affect the validity of any other provision of the ordinance. Nor does this holding prevent clause (B) of section 14-53.(3) from being enforced against an outdoor theater that exhibits films viewable from "any private residence."
For the foregoing reasons, we hold that clauses (A) and (C) of section 14-53.(3) of the Cook County Outdoor Movie Theater Ordinance, as amended, are constitutional. We hold further that clause (B) of section 14-53.(3) is constitutional in part and unconstitutional in part. Accordingly, the trial court is affirmed in part and reversed in part.
Affirmed in part; reversed in part.
HARTMAN, P.J., and DOWNING, J., concur.
NOTES
[1] The original outdoor movie theater ordinance 78-O-25 (Cook County Ordinances 1978, chs. 14-47 et seq.) was adopted and went into effect on July 10, 1978. On May 29, 1979, the Honorable Reginald J. Holzer held the ordinance unconstitutional. The ordinance was thereafter amended (79-O-27) on September 4, 1979, in an effort to overcome the constitutional infirmities found in the original. This appeal is concerned with the ordinance in its amended form.
[2] The theater is located at the intersection of Illinois Routes 20 and 59 in unincorporated Cook County.
[3] In this appeal Starview also challenges sections 14-53.(4), 14-54 and 14-49. We express no opinion on the constitutionality of any of these provisions.

Section 14-53.(4) requires a licensee "[t]o refuse admittance of all minors un-accompanied by their parents or guardians to motion pictures or film presentations as described in paragraph (3) above." We find that Starview lacks standing to contest the validity of this provision. Starview represented to the trial court that "[t]he audience admitted to the theater has been limited to adults only, * * *." The theater has manifested no intention or desire to change this policy. Thus, Starview has not sustained and is in no danger of sustaining a direct injury as a result of the enforcement of this provision of the ordinance. (Illinois Gamefowl Breeders Association v. Block (1979), 75 Ill.2d 443, 451, 389 N.E.2d 529.) Since Starview is not aggrieved by the operation of section 14-53.(4) it cannot question its validity here. (Walker v. State Board of Elections (1977), 65 Ill.2d 543, 550, 359 N.E.2d 113.) This is true even though the usual strict rules concerning standing are relaxed when, as in the instant case, a first amendment attack on an ordinance for vagueness or overbreadth is made. (Grayned v. City of Rockford (1972), 408 U.S. 104, 114, 33 L.Ed.2d 222, 230-31, 92 S.Ct. 2294, 2302.) Starview must still claim "injury in fact" (Bigelow v. Virginia (1975), 421 U.S. 809, 817, 44 L.Ed.2d 600, 608-09, 95 S.Ct. 2222, 2230) or show "`specific present objective harm or a threat of specific future harm'" (Laird v. Tatum (1972), 408 U.S. 1, 13-14, 33 L.Ed.2d 154, 163-64, 92 S.Ct. 2318, 2325-26). No such injury or harm has been alleged or proved. We therefore decline to consider the constitutionality of section 14-53.(4).
Section 14-54 sets forth the procedure by which a license may be revoked or a licensee fined. Subsequent to the trial court's ruling in the case now before us, the county sought to revoke Starview's license. An extensive hearing was conducted on September 25 and 26, 1980. On January 28, 1981, the hearing officer found that Starview had violated section 14-53.(3) and imposed a fine of $2,500. We may take judicial notice of this decision (which has been reproduced in appendix A of the State's Attorney's brief) under the principles laid down in May Department Stores Co. v. Teamsters Local 743 (1976), 64 Ill.2d 153, 159, 355 N.E.2d 7, and Nordine v. Illinois Power Co. (1965), 32 Ill.2d 421, 428, 206 N.E.2d 709. On April 23, 1981, Starview advised this court that it proposed to file in the circuit court a complaint for administrative review of the hearing officer's decision. Presumably, that review is now pending before the circuit court. The issues concerning the constitutionality of section 14-54 will undoubtedly be more fully developed and argued in that proceeding than they have been here (Starview's discussion is extremely brief; the State's Attorney does not even mention section 14-54). Accordingly, we believe appellate consideration of section 14-54 should be deferred until the administrative review action reaches this court. See Rasky v. Anderson (1978), 62 Ill. App.3d 633, 636-37, 379 N.E.2d 1.
Section 14-49 provides, in part, that every license "shall be subject to all laws, resolutions and regulations now in force and effect, or which may hereinafter be enacted, adopted or approved relating to outdoor movie theaters used for public viewing of motion pictures or other film presentations." Starview asserts that by this section, "the County Board is attempting to have the appellant waive his constitutionally protected rights under the First and Fourteenth Amendments." Aside from the provisions of the ordinance already mentioned, Starview does not argue that the County Board has passed any invalid "laws, resolutions [or] regulations" affecting outdoor movie theaters. Whether the County Board will do so in the future is sheer speculation. "* * * [A] declaratory judgment is an inappropriate action for declaring the rights of the parties on a state of facts which has not yet arisen, or which is future, contingent and uncertain. [Citation.]" Baugher v. Walker (1977), 47 Ill. App.3d 573, 577-78, 362 N.E.2d 410.
[4] A reviewing court can take judicial notice of such events or facts which, while not appearing in the record, disclose that an actual controversy no longer exists between the adverse parties. (Bluthardt, at 250.) Where the facts suggesting mootness are neither matters of common knowledge nor readily verifiable and capable of "instant and unquestionable demonstration" (9 Wigmore, Evidence § 2571, at 548 (3d ed. 1940)), they may be proved by extrinsic evidence, including a motion supported by affidavit. Slaughter v. Thornton (1975), 34 Ill. App.3d 422, 424, 339 N.E.2d 776; Buckingham Corp. v. Vesolowski (1974), 17 Ill. App.3d 58, 61, 307 N.E.2d 703; La Salle National Bank v. City of Chicago (1954), 3 Ill.2d 375, 379, 121 N.E.2d 486.
[5] The Ridens tests for determining obscenity under section 11-20 have been held applicable to prosecutions under local obscenity ordinances. See Eagle Books, Inc. v. City of Rockford (1978), 66 Ill. App.3d 1038, 1043, 384 N.E.2d 493; City of Delavan v. Thomas (1975), 31 Ill. App.3d 630, 632-33, 334 N.E.2d 190.
[6] Again, in Mosley, 408 U.S. 92, 99, 33 L.Ed.2d 212, 218-19, 92 S.Ct. 2286, 2292, the court stated: "In this case, the ordinance itself describes impermissible picketing not in terms of time, place, and manner, but in terms of subject matter. The regulation `thus slip[s] from the neutrality of time, place, and circumstance into a concern about content.' This is never permitted." Similar expressions appear in the court's decisions in Carey v. Brown (1980), 447 U.S. 455, 460-63, 65 L.Ed.2d 263, 269-71, 100 S.Ct. 2286, 2289-91; Linmark Associates, Inc. v. Township of Willingboro (1977), 431 U.S. 85, 94, 52 L.Ed.2d 155, 162-63, 97 S.Ct. 1614, 1619; Madison Joint School District v. Wisconsin Employment Relations Com. (1976), 429 U.S. 167, 175-76, 50 L.Ed.2d 376, 384-85, 97 S.Ct. 421, 426-27; and Hudgens v. National Labor Relations Board (1976), 424 U.S. 507, 520, 47 L.Ed.2d 196, 207, 96 S.Ct. 1029, 1036-37, all cited by Starview.

Starview does not maintain that the private residences of nearby homeowners constitute a "public forum," nor does it assert a right to exhibit its films so that they may be viewed from outside the theater. Starview, after all, is "a commercial enterprise which depends for its success on paying customers, not on freeloading passersby." (Erznoznik v. City of Jacksonville (1975), 422 U.S. 205, 210 n. 6, 45 L.Ed.2d 125, 131 n. 6, 95 S.Ct. 2268, 2273 n. 6.) Thus, unlike the circumstances present in Mosley and the related cases cited by Starview, there is no "public forum" issue here. Mosley, however, does address the constitutionality of content-based discrimination. The discrimination of which Starview complains inheres in the fact that under the ordinance only outdoor theaters intending to present films containing scenes of "sexually explicit nudity" must incur the costs of shielding their screens from the view of persons outside the theater.
[7] See, e.g., Justice Brennan's concurring opinion in Lamont v. Postmaster General (1965), 381 U.S. 301, 309, 14 L.Ed.2d 398, 403-04, 85 S.Ct. 1493, 1497: "* * * [I]nhibition as well as prohibition against the exercise of precious First Amendment rights is a power denied to government. [Citations.]" See also Boyd v. United States (1886), 116 U.S. 616, 635, 29 L.Ed. 746, 752, 6 S.Ct. 524.
[8] While only three other justices joined this portion of Justice Stevens' opinion, a majority of the court has recently acknowledged that Young stands for the proposition "that a zoning ordinance is not invalid merely because it regulates activity protected by the Fourth Amendment, * * *." Schad v. Borough of Mount Ephraim (1981), ___ U.S. ___, ___, 68 L.Ed.2d 671, 682, 101 S.Ct. 2176, 2184.
[9] In concluding that content-based regulation of non-obscene material is not per se unconstitutional, we do not rely on the Supreme Court's decision in FCC v. Pacifica Foundation (1978), 438 U.S. 726, 57 L.Ed.2d 1073, 98 S.Ct. 3026, cited by the county. That case involved the Federal Communication Commission's regulatory power over broadcasting. The court specifically noted that "of all forms of communication, it is broadcasting that has received the most limited First Amendment protection." (438 U.S. 726, 748, 57 L.Ed.2d 1073, 1092, 98 S.Ct. 3026, 3040.) For purposes of constitutional analysis, an outdoor movie theater is not engaged in "broadcasting." The county's reading of the FCC case is clearly at odds with what the Supreme Court has held to be permissible in regulating the fare of outdoor theaters. See Erznoznik v. City of Jacksonville (1975), 422 U.S. 205, 45 L.Ed.2d 125, 95 S.Ct. 2268, discussed below.
[10] We are mindful of Mr. Justice Frankfurter's admonition that the term "prior restraint" is neither "a self-wielding sword" nor a "talismanic test." Kingsley Books, Inc. v. Brown (1957), 354 U.S. 436, 441, 1 L.Ed.2d 1469, 1473, 77 S.Ct. 1325, 1328.
[11] According to the record, Starview's screen is 72 feet high and 96 feet wide.
[12] Citing Rowan, the Supreme Court has expressly held that "in the privacy of the home, * * * the individual's right to be left alone plainly outweighs the First Amendment rights of an intruder." FCC v. Pacifica Foundation (1978), 438 U.S. 726, 748, 57 L.Ed.2d 1073, 1093, 98 S.Ct. 3026, 3040.
[13] Indeed, the State's Attorney has specifically argued that the purpose of the ordinance was to provide the citizens of Cook County with a "remedy against pornography which falls just short of obscenity."
[14] In this appeal, we need not determine under what circumstances either live entertainment or films constitutionally may be enjoined as obscene. See City of Chicago v. Festival Theatre Corp. (1980), 88 Ill. App.3d 216, 230, 410 N.E.2d 341 (appeal allowed, January 30, 1981), ___ Ill.2d ___; Vance v. Universal Amusement Co. (1980), 445 U.S. 308, 63 L.Ed.2d 413, 100 S.Ct. 1156.
[15] In footnote 9 to its opinion, the court said that it was not concerned with "a nondiscriminatory nuisance ordinance designed to protect the privacy of persons in their homes from the visual and audible intrusions of such theaters." Here, of course, the ordinance does discriminate on the basis of a film's content. Erznoznik itself, however, recognized that under Rowan, selective restrictions of some kinds of speech may be upheld "when the speaker intrudes on the privacy of the home * * *." 422 U.S. 205, 209, 45 L.Ed.2d 125, 131, 95 S.Ct. 2268, 2272.
[16] In its brief, the county implies that section 14-53.(3) is constitutional because it uses the same term "sexually explicit nudity" which Erznoznik approves. However, it is the definition in the ordinance of the term "sexually explicit nudity" and not its mere incantation which determines the constitutionality of section 14-53.(3). We recognize "the ancient wisdom that calling a thing by a name does not make it so." Madison Joint School District v. Wisconsin Employment Relations Com. (1976), 429 U.S. 167, 174, 50 L.Ed.2d 376, 384, 97 S.Ct. 421, 425.