SOUTHLAND NEWS COMPANY, INC., Plaintiff-Appellant, v. THE PEO-PLE OF THE STATE OF ILLINOIS *et al.*, Defendants-Appellees.

Second District   No. 85—0211

Opinion filed May 19, 1986.

J. Steven Beckett, of Reno, O'Byrne & Kepley, of Champaign, and Daniel Cain, of Sreenan & Cain, P.C., of Rockford, for appellant.

Daniel Doyle, State's Attorney, of Rockford (Patrick J. Winn, Assistant State's Attorney, of counsel), for the People.

JUSTICE SCHNAKE delivered the opinion of the court:

The county of Winnebago has an ordinance making it unlawful to operate a theater in the unincorporated areas of the county without first obtaining a license. Under the ordinance licenses are valid "until succeeding April 30 from the date of issue." Section 4—14 provides that license applications are to be accompanied by, *inter alia*:

"(c) A written covenant by the applicant to refrain or desist from exhibiting any motion picture or film presentation viewable from any private residence or any public street or walkway which contains any scene or scenes depicting sexual intercourse, masturbation, oral copulation, erect male genitalia or male ejaculation;
[and]
(d) A written covenant by the applicant to refrain or desist from exhibiting any motion picture or film presentation viewable from any private residence which contains any scene or scenes depicting the caressing or fondling of the bare female breast or bare male or female buttocks, anus or genitals."

The ordinance established the Winnebago County Board Investigative Commission (the commission) to hear and determine alleged ordinance violations, including violations of the covenants quoted above. Violations may result in license suspension for up to 30 days or license revocation. Fines not exceeding $200 per violation may also be imposed.

Plaintiff Southland News Company, Inc. (Southland), is the licensed owner and operator of an outdoor theater called the Sunset Drive-in Theater which is subject to this ordinance. In July 1984, the State's Attorney of Winnebago County filed a petition against Southland with the commission. The petition was brought in the name of the People of the State of Illinois, and alleged that Southland had violated the covenant required by section 4—14(c) on various dates in June and July 1984. Following an evidentiary hearing, the commission determined that Southland had violated the covenant on June 14, July 7, and July 8, 1984. Southland was fined a total of $400 and its license was suspended for 30 days.

Southland filed a petition with the circuit court for a writ of *certiorari* to review the decision of the commission. The State, the commission, and its members were made defendants in that proceeding. The circuit court stayed the license suspension pending judicial review and subsequent appeal. The stay was entered before the license suspension interfered with Southland's operation of its theater.

After reviewing the record of the proceedings before the commission, the circuit court entered an order affirming the commission's decision. Southland appeals, contending (1) that the ordinance is unconstitutional on its face as an abridgment of the freedom of speech guaranteed by the first amendment (U.S. Const., amend I) because it requires the theater operator to covenant not to show constitutionally protected movies if they are viewable from the locations specified, (2) that, as applied, the ordinance imposed an unconstitutional prior restraint on Southland's exercise of that freedom, (3) that the proceedings before the commission were a nullity because they were brought in the name of the People of the State of Illinois rather than the People of the County of Winnebago, and (4) that the decision of the commission was against the manifest weight of the evidence.

■ The issue of the facial validity of the ordinance is controlled by *People ex rel. Carey v. Starview Drive-In Theatre, Inc.* (1981), 100 Ill. App. 3d 624, 427 N.E.2d 201, *appeal dismissed* (1982), 457 U.S. 1113, 73 L. Ed. 2d 1324, 102 S. Ct. 2918. In *Starview* the appellate court held that certain provisions of a Cook County outdoor-theater licensing ordinance, which are indistinguishable from the provisions of ordinance at issue here, were not unconstitutional on their face. The court recognized that motion pictures constitute a form of expression entitled to protection under the first and fourteenth amendments of the United States Constitution. (100 Ill. App. 3d 624, 628, 427 N.E.2d 201.) It also recognized that, although obscenity is not constitutionally protected, the regulation of sexually explicit films by the ordinance

was not limited to obscenity but was applicable to constitutionally protected material. (100 Ill. App. 3d 624, 629, 427 N.E.2d 201.) The court, however, held that, insofar as the ordinance prohibited the showing of sexually explicit films viewable from private residences, the right to privacy of the residents outweighed the first amendment rights. (100 Ill. App. 3d 624, 634-636, 427 N.E.2d 201.) Insofar as the ordinance prohibited the exhibition of sexually explicit films viewable from public streets or walkways in the same manner as the ordinance here, the court held that it was justified in order to protect minors from materials obscene as to them. (100 Ill. App. 3d 624, 636-638, 427 N.E.2d 201.) It is well settled that the government may adopt more stringent controls on communicative materials available to youths than on those available to adults. (See *Erznoznik v. City of Jacksonville* (1975), 422 U.S. 205, 212-13, 45 L. Ed. 2d 125, 133, 95 S. Ct. 2268, 2274.) We agree with the decision in *Starview* and, therefore, hold that the Winnebago County ordinance at issue here is not unconstitutional on its face.

■ We next consider Southland's argument that, as applied, the ordinance imposed an unconstitutional prior restraint on its freedom of speech. The State maintains that this issue, like the issue of the facial validity of the ordinance, is controlled by *Starview*. We disagree. The court in *Starview* explicitly stated that it was expressing no opinion on the constitutionality of that portion of the Cook County ordinance which set forth the procedure by which a license might be revoked or a licensee fined. (*People ex rel. Carey v. Starview Drive-In Theatre, Inc.* (1981), 100 Ill. App. 3d 624, 626 n. 3, 427 N.E.2d 201.) While there was some discussion of the doctrine of prior restraint in the opinion, that discussion, however, was directed to the question of whether requiring the licensee to make the covenants amounted to an unconstitutional prior restraint. The court held that the requirement was in the nature of a legislative prior restraint, as opposed to an executive prior restraint. (100 Ill. App. 3d 624, 633, 427 N.E.2d 201.) The court indicated that while the latter for of prior restraint is presumptively invalid (100 Ill. App. 3d 624, 632, 427 N.E.2d 201), the validity of legislative prior restraints turns upon the same sort of considerations as subsequent punishment cases. (100 Ill. App. 3d 624, 634, 427 N.E.2d 201.) As noted above, considered as a legislative prior restraint, the requirement that the theater operator make the covenants was determined to be constitutional. In the instant case we are concerned with an order issued by the commission which suspends Southland's license for 30 days. This is an executive prior restraint and its validity is not controlled by *Starview*.

The State also argues that this issue is the same as one recently decided by the United States Court of Appeals in *Southland News Co. v. County of Winnebago* (7th Cir. 1985), 774 F.2d 1167, *cert. denied* (1986), 475 U.S. \_\_\_, 89 L. Ed. 2d 733, 106 S. Ct. 1478. We have obtained a copy of that decision which was issued as an unpublished order. In that case Southland challenged the power of the county to require the covenants as part of the license application. The issue of the validity of the license suspension was not before the Federal courts.

As noted in *Starview*, executive prior restraints on freedom of speech bear a heavy presumption against their constitutional validity. (*Bantam Books, Inc. v. Sullivan* (1963), 372 U.S. 58, 70, 9 L. Ed 2d 584, 593, 83 S. Ct. 631, 639.) The presumption against their validity is heavier than that against limits on expression imposed by subsequent punishments. The United States Supreme Court has explained this distinction as follows:

> "[A] free society prefers to punish the few who abuse rights of speech *after* they break the law than to throttle them and all others beforehand. It is always difficult to know in advance what an individual will say, and the line between legitimate and illegitimate speech is often so finely drawn that the risks of freewheeling censorship are formidable." (Emphasis in original.) *Southeastern Promotions, Ltd. v. Conrad* (1975), 420 U.S. 546, 559, 43 L. Ed. 2d 448, 459, 95 S. Ct. 1239, 1246-47.

Prior restraints are not, however, unconstitutional, *per se*. In *Near v. Minnesota ex rel. Olson* (1931), 283 U.S. 697, 716, 75 L. Ed. 1357, 1367, 51 S. Ct. 625, 631, the court stated in *dictum* that prior restraints could be employed to enforce the primary requirements of decency against obscene publications. And in *Freedman v. Maryland* (1965), 380 U.S. 51, 13 L. Ed. 2d 649, 85 S. Ct. 734, the court set forth the following constitutional requirements for a system of government censorship of obscene motion pictures: (1) the government must institute judicial proceedings in order to have a film suppressed, and it must bear the burden of proving that the film is obscene; (2) any restraint imposed prior to final judicial determination must be for the shortest fixed period compatible with sound judicial resolution, and (3) the procedure must assure a prompt final judicial decision.

The license suspension ordered in the instant case would not merely prohibit Southland from exhibiting films in violation of the ordinance. It would prevent Southland, during the term of the suspension, from showing any films even if they were not obscene as to minors or viewable from private residences. The license suspension

imposes a prior restraint on Southland's freedom of speech without adequate safeguards, and it is, therefore, unconstitutional.

Other courts called upon to decide similar questions have reached similar conclusions. In *Colonie Theater v. City of Schenectady* (1982), 89 A.D.2d 631, 453 N.Y.S.2d 94, the court held unconstitutional those provisions of the city's theater licensing ordinance which authorized license revocation or suspension upon a judicial determination that the theater had exhibited an obscene film. The court stated that "a finding of unprotected present conduct should not serve as the basis for the prohibition of future conduct that may well fall within the purview of the first Amendment [citation]." (89 A.D.2d 631, 632, 453 N.Y.S. 2d 94, 95.) In *Gayety Theatres, Inc. v. City of Miami* (11th Cir. 1983), 719 F.2d 1550, the court overturned the revocation, under a similar ordinance, of a theater operator's license. The court adopted the opinion of the trial court which stated:

> "In this case, there has been a judicial determination in state court that the plaintiff violated state law by exhibiting an obscene video tape. The City of Miami has constitutionally prevented further showing of that video tape. That it can surely do, but it cannot constitutionally pierce the First Amendment shield and bar, for one year, presumptively protected expression based only on prior unprotected conduct." (719 F.2d 1550, 1552.)

In *Alexander v. City of St. Paul* (1975), 303 Minn. 201, 227 N.W.2d 370, the court overturned the revocation of the theater operator's license which had been based on an ordinance that authorized revocation if an employee of the theater had been convicted of exhibiting obscene material "relative to the operation of the motion picture theater license." (303 Minn. 201, 203, 227 N.W.2d 370, 371.) The court stated that the failure of the ordinance was that "it is impossible under such a scheme to ensure that only obscene films will be suppressed in the future." (303 Minn. 201, 210, 227 N.W.2d 370, 375.) In *People ex rel. Busch v. Projection Room Theater* (1976), 17 Cal. 3d 42, 550 P.2d 600, 130 Cal. Rptr. 328, *cert. denied* (1976), 429 U.S. 922, 50 L. Ed. 2d 289, 97 S. Ct. 320, the court held that it was constitutionally impermissible to close a movie theater for one year under the State's public nuisance laws because the theater had exhibited obscene films. Accord *State v. A Motion Picture Entitled "The Bet"* (1976), 219 Kan. 64, 547 P.2d 760. See also *City of Minot v. Central Avenue News, Inc.* (N.D. 1981), 308 N.W.2d 851, *appeal dismissed* (1981), 454 U.S. 1117, 71 L. Ed. 2d 105, 102 S. Ct. 961; *City of Delavan v. Thomas* (1975), 31 Ill. App. 3d 630, 334 N.E.2d 190. *Cf. People ex rel. Arcara v.*

*Cloud Books, Inc.* (1985), 65 N.Y.2d 324, 480 N.E.2d 1089, *cert. granted* (1985), 474 U.S. ____, 88 L. Ed. 2d 333, 106 S. Ct. 379 (unconstitutional under first amendment to close book store for one year under state public health statute based on acts of solicitation for prostitution occurring on the premises where there were less restrictive means available to vindicate the State's interest). But see *106 Forsyth Corp. v. Bishop* (5th Cir. 1973), 482 F.2d 280, *cert. denied* (1975), 422 U.S. 1044. 45 L. Ed. 2d 696, 95 S. Ct. 2660; *Bloss v. Paris Township* (1968), 380 Mich. 466, 157 N.W.2d 260.

We wish to note that the ordinance regulation here involved is readily distinguishable from that approved by the United States Supreme Court in *Renton v. Playtime Theatres, Inc.* (1986), 475 U.S. ____, 89 L. Ed. 2d 29, 106 S. Ct. 925. There it was held that "content neutral" time, place and manner regulation of adult motion pictures did not infringe on first amendment protection.

■ Although that part of the ordinance concerning license revocation and suspension is unconstitutional, for the reasons stated in *Starview* we see no constitutional impediment to imposing a fine as a subsequent punishment. Moreover, in our judgment, the invalidity of that section concerning license revocation and suspension does not affect that portion of the ordinance authorizing fines. In *City of Rockford v. Grayned* (1970), 46 Ill. 2d 492, 263 N.E.2d 866, *rev'd in part on other grounds* (1972), 408 U.S. 104, 33 L. Ed. 2d 222, 92 S. Ct. 2294, our supreme court considered an ordinance authorizing two penalties, one of which was invalid. The court decided that the invalidity of the one penalty did not affect the other, quoting the following language from *Brown v. City of Chicago* (1969), 42 Ill. 2d 501, 505, 250 N.E.2d 129:

> "If what remains after the invalid portion is stricken is complete in itself and capable of being executed wholly independently of that which is rejected, the invalid portion does not render void the entire ordinance unless it can be said that the city council would not have passed it with the invalid portion eliminated." (46 Ill. 2d 492, 495-96, 250 N.E.2d 129.)

Here, the fines may be imposed wholly independently of license revocation or suspension, and the county board clearly would have authorized the fines with the unconstitutional portion of the ordinance eliminated. Moreover, the county may be able to vindicate its legitimate interests by a more narrowly circumscribed prior restraint. (See *City of Chicago v. Festival Theatre Corp.* (1982), 91 Ill. 2d 295, 438 N.E.2d 159.) Such a restraint is, however, not before us in this appeal.

■ We next consider Southland's argument that the proceedings

before the commission were a nullity because they were brought in the name of the People of the State of Illinois rather than the People of the County of Winnebago. This argument is not well taken. The petition in this case was brought by the State's Attorney of Winnebago County. By statute, it is the duty of the State's Attorney "[t]o commence and prosecute all actions, suits, indictments and prosecutions, civil and criminal, in the circuit court for his county, in which the people of the State *or county* may be concerned." (Emphasis added.) (Ill. Rev. Stat. 1985, ch. 14, par. 5.) Moreover, in fulfilling his duty of bringing actions on behalf of the county, the State's Attorney is not required to first obtain authorization from the county board to file suit. (*County of Champaign v. Hanks* (1976), 41 Ill. App. 3d 679, 353 N.E.2d 405.) Under these circumstances, the State's Attorney clearly had authority to bring this action, and the caption of the pleading, although not technically correct, is not reversible error. (See *People ex rel. Brown v. Illinois State Troopers Lodge No. 41* (1972), 7 Ill. App. 3d 98, 286 N.E.2d 524.) The case upon which Southland relies, *People v. Rowe* (1972), 9 Ill. App. 3d 460, 292 N.E.2d 432, is distinguishable. There a city ordinance prosecution was brought "in the name and by the authority of the People of the State of Illinois." (9 Ill. App. 3d 460, 464, 292 N.E.2d 432.) It is not the State's Attorney's duty to bring such actions on behalf of cities. Under those circumstances, the error was a "substantial defect." 9 Ill. App. 3d 460, 464, 292 N.E.2d 432.

■ We next consider defendant's final contention, that the decision of the commission was against the manifest weight of the evidence. In a *certiorari* proceeding the court must ascertain whether the administrative agency had jurisdiction, whether it proceeded according to law and acted on the evidence, and whether there is anything in the record which fairly tends to sustain the action of the agency. (*Caldbeck v. Chicago Park District* (1981), 97 Ill. App. 3d 452, 423 N.E.2d 230.) The reviewing court may not weigh the evidence or judge its probative value but rather must determine only whether the decision is supported by the evidence or is manifestly against the weight of the evidence. (97 Ill. App. 3d 452, 459, 423 N.E.2d 230.) Here the county presented the testimony of police officers and people who resided near the theater to the effect that on the dates in question they observed, from the locations specified in the ordinance, sexually explicit scenes as described therein. This testimony was sufficient to sustain the commission's decision. Southland presented evidence that on a later date the films exhibited at the theater were not viewable from the same locations. There was evidence, however,

that the films shown then were darker than most of the films shown at the theater. The commission's decision that Southland violated its covenant was not against the manifest weight of the evidence.

For the reasons stated above, the judgment of the circuit court is affirmed insofar as it affirmed the fines assessed against Southland. The portion of the judgment which affirmed the license suspension is, however, reversed.

Affirmed in part and reversed in part.

LINDBERG and STROUSE, JJ., concur.