JEFFREY LAUREN LAND COMPANY v CITY OF LIVONIA (ON REMAND)

Docket No. 65420. Submitted July 6, 1982, at Lansing.—Decided September 22, 1982. Leave to appeal applied for.

The Jeffrey Lauren Land Company applied to the City of Livonia for waiver-use approval which would allow it to construct a new four-theater complex in Livonia. Under the zoning ordinance applicable to the property involved, theaters were not a permitted use but were subject to waiver-use approval. The application to build the four-theater structure was approved by the city planning commission and the department of public safety but was rejected by the city council. The reasons given for the rejection were that the area already had sufficient theaters, with one already on the property involved, that an increase in traffic would cause added traffic problems to already overburdened roads and that the site involved could not adequately accommodate the increased intensity of use. The Jeffrey Lauren Land Company then filed a three-count complaint in Wayne Circuit Court, Count I of which was a prayer for a writ of mandamus finding the action of the city council illegal and arbitrary and ordering that the defendant city grant plaintiff's petition to construct the four-theater complex. The writ of mandamus was denied and Count I of the complaint was dismissed with prejudice, BLAIR MOODY, JR., J. The complaint was then amended to challenge the constitutionality of the zoning ordinance. A trial was held and the ordinance was found to be unconstitutional, Joseph G. Rashid, J. Defendant

REFERENCES FOR POINTS IN HEADNOTES

[1] 82 Am Jur 2d, Zoning and Planning §§ 7, 281 *et seq.*

[2] 16 Am Jur 2d, Constitutional Law §§ 217-219.

16A Am Jur 2d, Constitutional Law §§ 360 *et seq.*, 412 *et seq.*

[3] 82 Am Jur 2d, Zoning and Planning §§ 7, 11 *et seq.*

[4] 4 Am Jur 2d, Amusements and Exhibitions §§ 20, 21.

15A Am Jur 2d, Commerce § 85.

16A Am Jur 2d, Constitutional Law §§ 505, 603, 604.

Constitutionality of regulation of obscene motion pictures—Federal cases. 22 L Ed 2d 949.

[5] 16A Am Jur 2d, Constitutional Law § 521.

appealed and the Court of Appeals reversed, 109 Mich App 508 (1981). The Supreme Court, in lieu of granting plaintiff's application for leave to appeal, vacated the judgment of the Court of Appeals and remanded the case for reconsideration, 413 Mich 950 (1982). On remand, *held:*

The provisions of the challenged ordinance which restrict the zones within which a theater could be built were narrowly drawn to serve a significant government' interest, and the ordinance left open adequate alternative channels of communication. The circuit court's decision is reversed.

Reversed.

1. Zoning — Zoning Enabling Act — Specific Land Uses.

The zoning enabling act specifically allows a municipality to provide in its zoning ordinances for specific land uses which will be permitted in a zoning district only after review and approval by a commission; it also provides that the legislative body of the municipality may deny requests for special land use provided that it indicates the specific basis for its decision (MCL 125.584a; MSA 5.2934[1]).

2. Constitutional Law — Police Powers.

A test measuring the existence of a real and substantial relationship between the exercise of the police power and the public health, safety, morals, and general welfare is applied to determine the validity of a particular governmental proscription.

3. Zoning — Constitutional Law.

Zoning ordinances are presumed constitutional unless proven otherwise by competent evidence, or unless they are facially invalid.

4. Constitutional Law — Motion Pictures.

Motion pictures, along with a wide variety of other forms of expression, are within the protection of the First and Fourteenth Amendments (US Const, Ams I, XIV).

5. Constitutional Law — First Amendment — Zoning.

A court, in reviewing a zoning law which infringes upon First Amendment activities, must assess not only the substantiality of the governmental interests asserted but must also determine whether those interests could be served by means that would be less intrusive on the protected activity (US Const, Am I).

*Arthur J. Hass,* for plaintiff.

*Harry C. Tatigian,* City Attorney, for defendant.

ON REMAND

Before: N. J. KAUFMAN, P.J., and ALLEN and
D. C. RILEY, JJ.

D. C. RILEY, J. On September 11, 1981, this
Court filed an opinion reversing the trial court's
decision rendering unconstitutional a zoning ordi-
nance which purportedly precluded the erection of
additional movie theaters in Livonia, *Jeffrey Lau-
ren Land Co v Livonia,* 109 Mich App 508; 311
NW2d 795 (1981). On June 30, 1982, the Michigan
Supreme Court, in lieu of granting plaintiff's appli-
cation for leave to appeal, pursuant to GCR 1963,
853.2(4), vacated the judgment of this Court and
remanded the case for our consideration in light of
*Schad v Borough of Mount Ephraim,* 452 US 61;
101 S Ct 2176; 68 L Ed 2d 671 (1981). Accordingly,
we have analyzed the facts of this case in accor-
dance with the principles set forth in *Schad, su-
pra.*

Plaintiff, a motion picture exhibitor, purchased
21 acres of land in Livonia at the northeast corner
of Plymouth and Farmington Roads in 1961. The
southern half of this property, approximately 11
acres, has been zoned C-2 (general business) since
1952. The balance of the property is zoned M-1
(light manufacturing) and is not a factor in these
proceedings. At present, plaintiff owns and oper-
ates a 1,400 seat theater on this property.[1]

Livonia's first zoning ordinance (Ordinance #60)

---

[1] The existing theater was built prior to 1965 in the M-1 distict.
Although it is now a nonconforming use, the theater can be sustained,
repaired, remodeled, and improved. However, if destroyed, it cannot
be rebuilt. It may be enlarged only with the zoning board's approval.

was enacted in 1952 and remained in effect until 1965 when it was replaced by Ordinance #543. Under the new ordinance, theaters could not be built in M-1 districts and were permitted only in a C-2 district. Seven years later, in 1973, § 11.03 was added to Livonia's zoning regulations with the enactment of Ordinance #1071. This ordinance removed theaters as a permitted use in C-2 districts and they were made subject to waiver-use approval.

This appeal arises from defendant's refusal to grant a waiver use which would allow plaintiff to construct a new four-theater complex, with a seating capacity of over 1,800 people, on the southern parcel of property zoned C-2.

Plaintiff's application to build the four-theater structure was submitted to the city planning commission in 1974. The commission and the department of public safety approved the plan but it was ultimately rejected by the city council for the following reasons:

"1. The area is already adequately served by theaters, one already existing on the subject site;
"2. The proposed development would generate an increase in traffic and would cause added traffic problems to the major roads of Farmington and Plymouth Roads, which are already overburdened with traffic;
"3. The proposed use, which would add a quad-theater with a seating capacity of 1,835 seats would overburden the site and the area, as the site does not have the capacity to adequately accommodate the increased intensity of use."

In reviewing a waiver-use petition, the council does not exercise any discretion in the application of the special standards set out in § 11.03(q), but it

does have discretion in applying the general standards of § 19.06. In refusing plaintiff's petition, the council invoked its absolute discretion provided by ordinances and charter even though plaintiff's petition had conformed with all of the requirements set forth in § 110.3(q).[2]

We note first that this ordinance does not, on its face, censor any particular type of movie or theater. It applies equally to all theaters. It is ostensibly a land use regulation and not a censorship ordinance. We note further that the record before us indicates that there are presently three theater complexes consisting of a total of six theaters now located in Livonia. Further, C-2 zoning allows for numerous commercial ventures for which the parcel at issue has substantial value. Finally, with the enactment of Ordinance #1101 in 1972, theaters may be constructed in a C-3 district as a permitted use. This, however, would require a zoning change. Plaintiff has not petitioned the City of Livonia to

---

[2] Section 11.03(q) provides:

"(q) Theaters, enclosed (not including drive-in theaters) but only when such use is carried on in a building properly designed and suitable for theater use and when such theater is located on a parcel of land five (5) acres or more in size. The Planning Commission shall recommend approval of a theater located on a parcel of land more than five (5) acres in size only if it finds that the proposal for such use complies with the following additional requirements.

"(1) Such use shall have a minimum seating capacity of four hundred (400) seats.

"(2) Such use shall have direct access by means of at least two (2) separate entrances and exits to a major thoroughfare having an existing or planned width of one hundred twenty (120) feet or more as designated on the Master Thoroughfare Plan of the City of Livonia.

"(3) Signs shall be provided pursuant to Section 18.50E and shall be non-flashing."

In an opinion dated July 15, 1976, the trial judge held that the Livonia City Council's decision to deny plaintiff a waiver-use was not an abuse of discretion. A panel of this Court affirmed that ruling in an unpublished per curiam opinion, *Jeffrey Lauren Land Co v Livonia,* docket #77-1181, released January 10, 1978, and the Supreme Court denied leave to appeal, 405 Mich 819 (1979). Thus, the only issues left for our resolution at this time concern whether the lower court erred in finding the Livonia ordinance unconstitutional.

rezone the subject property or any other property to a C-3 use.

Defendant first argues that a city may amend its zoning ordinance so as to classify theaters as a special or waiver use subject to review and compliance with specific standards with respect to location and structure when no attempt is made to restrict the content and type of film shown.

We find this argument consistent with MCL 125.584a; MSA 5.2934(1), the zoning enabling act, which specifically allows a municipality to provide in its zoning ordinances for specific land uses which will be permitted in a zoning district only after review and approval by a commission. This section also provides that the legislative body may deny requests for special land use provided that it indicates the specific basis for its decision.

In order to determine the validity of a particular governmental proscription, a test measuring the "existence of a real and substantial relationship" between the exercise of the police power and the public health, safety, morals, and general welfare will be applied. *People v Yeo,* 103 Mich App 418, 421; 302 NW2d 883 (1981). Also, all such ordinances are presumed constitutional unless proven otherwise by competent evidence, or unless they are facially invalid. *Yeo, supra.* See, also, *Bruni v Farmington Hills,* 96 Mich App 664, 668; 293 NW2d 609 (1980). In this case, the statute in question does not, *on its face,* affect constitutional rights; it does not purport to regulate the content or types of movies shown.

Defendant also argues that motion picture theaters which cater to general audiences are not within the ambit of the First and Fourteenth Amendments of the United States Constitution and article 1, § V of the Michigan Constitution.

Plaintiff's contention, on the other hand, is that motion picture theaters stand on the same footing as motion pictures themselves in terms of the applicability of the First and Fourteenth Amendments.

It is clear that motion pictures, along with a wide variety of other forms of expression, are within the protection of the First and Fourteenth Amendments. *Erznoznik v City of Jacksonville,* 422 US 205; 95 S Ct 2268; 45 L Ed 2d 125 (1975); *Young v American Mini Theatres, Inc,* 427 US 50, 61-62; 96 S Ct 2440, 2447-2448; 49 L Ed 2d 310 (1976). *Schad, supra,* seems to stand for the proposition that where a litigant asserts a claim rooted in the First Amendment, that litigant is entitled to rely on the impact of the ordinance on the expressive activities of others as well as their own. Here, it is clear that the challenged ordinance precludes erection of any movie theaters in the C-2 district and, therefore, restricts the expressive activities of plaintiff as well as any others who might wish to build a movie theater.

The question now becomes whether the defendant has a sufficient justification for the exclusion of this particular category of protected expression. In reviewing a zoning law which infringes upon First Amendment activities, the Court must assess not only the substantiality of the governmental interests asserted but also determine whether those interests could be served by means that would be less intrusive on the protected activity. *Village of Schaumburg v Citizens for a Better Environment,* 444 US 620, 637; 100 S Ct 826, 836; 63 L Ed 2d 73 (1980).

We must note initially that the ordinance in question involves a much more limited infringement of First Amendment activities than the ordi-

nance included in *Schad, supra.* In *Schad,* the challenged ordinance totally excluded any form of live entertainment from the borough. Here, however, movie theaters are merely excluded from one zone of the city. Theaters are a permitted use in other zones and, in fact, as indicated above, there are three existing theater complexes within the city.

We conclude that the defendant has adequately justified its limited restriction of expressive activities. The facts of this case clearly demonstrate that the City of Livonia had a compelling interest in adopting the ordinance in question. The city articulated a well-taken concern with the existing traffic and parking problems in the area and there was no question but that the introduction of a 1,800 seat theater would add, substantially, to the problems. A theater of this size obviously creates problems more significant than those associated with various other permitted uses. The Supreme Court's statement in *Schad,* to the effect that a theater does not create greater parking problems than would a restaurant, apparently did not envision a theater of this size.

We hold that the provisions of the challenged ordinance which restrict the zones within which a theater could be built were narrowly drawn to serve a significant government interest and that the ordinance left open adequate alternative channels of communication and, therefore, we reverse the circuit court's decision.

No costs, a public issue being involved.