ZEBULON ENTERPRISES, INC., Plaintiff-Appellee, v. THE COUNTY OF DU PAGE *et al.*, Defendants-Appellants.

Second District   No. 2—85—0454

Opinion filed August 21, 1986.

516

James E. Ryan, State's Attorney, of Wheaton (Barbara A. Preiner, Keith E. Letsche, Charles R. Rea, and Judith M. Pietrucha, Assistant State's Attorneys, of counsel), for appellants.

Alan C. Hoffman, of Alan C. Hoffman & Associates, of Chicago, for appellee.

JUSTICE SCHNAKE delivered the opinion of the court:

Plaintiff, Zebulon Enterprises, Inc. (Zebulon), operates an adult book and video store in unincorporated Du Page County. The store includes 29 booths where patrons can watch sexually explicit videotapes on coin-operated television sets.

On March 23, 1984, the County of Du Page charged Zebulon with violating its comprehensive zoning ordinance by operating the "mini-theaters" without first acquiring a special-use permit from the county board. In response Zebulon filed an action seeking a declaratory judgment to the effect that the special-use-permit requirement of the zoning ordinance was inapplicable to its business. Alternatively, Zebulon sought to enjoin the county and its officials from enforcing the ordinance on the ground that it was unconstitutional. The actions were consolidated, and both Zebulon, and the county and its officials filed motions for summary judgment. The court granted Zebulon's motion but did not indicate whether it was holding that the ordinance was inapplicable or unconstitutional. The county and its officials have appealed.

At the outset we note that one month before the hearing on the motions for summary judgment, the county amended its comprehensive zoning ordinance. It is undisputed that under the ordinance as amended a business with two or more mini-theaters in the district where Zebulon's store is located would be a special use for which a permit would be required. The amendment, however, included a "grandfather" provision under which uses existing as permitted uses under the prior law were allowed to be continued. The parties agree, therefore, that the law prior to the amendment controls the outcome

in this case. They agree that if that law did not require Zebulon to obtain a special-use permit, either by virtue of its terms or its unconstitutionality, then Zebulon may operate its business under the amended ordinance without obtaining a special-use permit.

Under the zoning ordinance prior to its amendment Zebulon's store was in a district zoned "B4." With respect to that zoning classification, the ordinance listed numerous "permitted uses" as well as several "special uses." Permits were required in order to operate a special use. The county maintains that Zebulon's business was included in the following two categories of special uses:

(1) "Recreation and amusement establishments; including archery ranges, bowling alleys, pool halls, dance halls, gymnasiums, swimming pools, skating rinks, golf driving ranges, miniature golf courses, miniature railroads, merry-go-rounds and other mechanical rides," and

(2) "Amusement Arcade (Game Room)."

In our judgment, the undisputed evidence presented in connection with the motions for summary judgment established that Zebulon's store was a recreation and amusement establishment within the meaning of the ordinance, and we need not, therefore, decide whether it could have been classified as an amusement arcade.

■■ Zoning ordinances are to be construed in the same way as statutes. (*LaSalle National Bank v. The Thresholds* (1975), 27 Ill. App. 3d 635, 327 N.E.2d 22.) Effect should be given to the intention of the drafters by concentrating on the terminology, its goals and purposes, the natural import of the words used in common and accepted usage, the setting in which they are employed, and the general structure of the ordinance. (*Pioneer Trust & Savings Bank v. County of Cook* (1978), 71 Ill. 2d 510, 377 N.E.2d 21.) The classification at issue here is "recreation and amusement establishment." the word "recreation," when used as a noun, has been defined as "refreshment of the strength and spirits after toil: DIVERSION, PLAY." As an adjective, the word means "equipped so as to provide diversions or amusements." (Webster's Third New International Dictionary 1899 (1966).) The word "amusement" has been defined as "pleasurable diversion: ENTERTAINMENT." (Webster's Third New International Dictionary 74 (1966).) Considering the natural import of these words, we think it is clear that Zebulon's business, which includes 29 booths where patrons can watch motion pictures, was a recreation and amusement establishment.

■ Zebulon argues that we should not construe the words "recreation" and "amusement" according to their natural import, but that

we should limit their meaning to active, rather than passive, activities. In support of this argument, Zebulon notes that several kinds of businesses that provide passive recreation and amusement were explicitly listed as permitted uses in a B4 district, *e.g.*, "Taverns" and "Theaters (not outdoor)." (Zebulon has conceded that its business was not a "theater" within the meaning of the ordinance.) This argument is undercut by the fact that at least one form of active recreation and amusement, "Riding academies, and public stables," was also explicitly set forth as a permitted use. Inconsistencies between general and specific classifications are not unheard of in comprehensive zoning ordinances. When they are encountered, the specific takes precedence over the general. (See *LaSalle National Bank v. The Thresholds* (1975), 27 Ill. App. 3d 635, 643-44, 327 N.E.2d 22.) Thus, the county could not have maintained under this ordinance that a tavern or a public stable was a special use pursuant to the general category of recreation and amusement establishments. Because the specific permitted uses included both active and passive recreations and amusements, however, we do not consider the inconsistencies to be a valid basis for limiting the meaning of the general classification to passive activities.

Zebulon has offered a second basis to support its argument that the terms "recreation" and "amusement" should be limited to active pastimes. Zebulon notes that the general classification "recreation and amusement establishments" was followed by the word "including" and then several examples of such establishments. Zebulon contends that all of the examples are active pastimes, and that the word "including" should be construed as a term of limitation on the antecedent general classification. We disagree.

██ The term "include" does not necessarily imply the exclusion of items not specifically enumerated. In fact, the weight of authority ordinarily interprets "include" as a term of enlargement. (*People v. Valley Steel Products Co.* (1978), 71 Ill. 2d 408, 419, 375 N.E.2d 1297; *Greyhound Lines, Inc. v. City of Chicago* (1974), 24 Ill. App. 3d 718, 727-28, 321 N.E.2d 293; see also *People v. Hall* (1964), 55 Ill. App. 2d 255, 204 N.E.2d 473.) Here we can perceive no reason for departing from the general rule, and we conclude that the word "including" was used merely to preface illustrative examples of the general classification, and not to limit its meaning. (See *Greyhound Lines, Inc. v. City of Chicago* (1974), 24 Ill. App. 3d 718, 727-28, 321 N.E.2d 293.) Accordingly, the zoning ordinance required Zebulon to obtain a special-use permit in order to conduct its business in a district zoned B4, and we must address the issues regarding its constitu-

tionality.

■ The first issue we must consider is whether Zebulon should be permitted to challenge the constitutionality of the zoning ordinance in this proceeding in light of its failure to exhaust its administrative remedies, *i.e.*, to apply for a special-use permit. A property owner who complains that an otherwise valid zoning ordinance is unconstitutional as applied to his property must exhaust his administrative remedies before seeking judicial relief. (*Northwestern University v. City of Evanston* (1978), 74 Ill. 2d 80, 383 N.E.2d 964.) The exhaustion requirement is inapplicable, however, where the property owner challenges the constitutionality of the ordinance on its face or in its terms. (See *Smith v. Cahoon* (1931), 283 U.S. 553, 75 L. Ed. 1264, 51 S. Ct. 582; *Northwestern University v. City of Evanston* (1978), 74 Ill. 2d 80, 383 N.E.2d 964.) While the county maintains that Zebulon is attacking the constitutionality of the ordinance as applied to its property, we cannot agree. Zebulon's constitutional arguments, which we will discuss below, are concerned with only the terms of the ordinance and are not dependent on any factual matters peculiar to its property. Accordingly, Zebulon may challenge the ordinance here.

■ Zebulon's first contention is that any zoning ordinance requiring special-use approval for the operation of mini-theaters would be unconstitutional as an abridgement of the freedom of speech guaranteed by the first amendment. (U.S. Const., amend. I.) We cannot agree with that broad proposition. In the recent case of *City of Renton v. Playtime Theatres, Inc.* (1986), 475 U.S. \_\_\_, 89 L. Ed. 2d 29, 106 S. Ct. 925, the United States Supreme Court was called upon to determine the constitutionality of a zoning ordinance which prohibited adult motion-picture theaters, as defined therein, from locating within 1000 feet of any residential zone, single-family or multifamily dwelling, church, park, or school. The court held that because the ordinance did not ban such theaters throughout the city, but merely restricted their location, it should be analyzed as a form of time, place, and manner restriction on freedom of speech. The court concluded that the zoning ordinance was "content-neutral" within the meaning of its previous decisions, and stated that " 'content-neutral' time, place, and manner regulations are acceptable so long as they are designed to serve a substantial governmental interest and do not unreasonably limit alternative avenues of communication." (475 U.S. \_\_\_, \_\_\_, 89 L. Ed. 2d 29, 37, 106 S. Ct. 925, 926.) The court went on to conclude that the ordinance was "narrowly tailored" to serve the substantial governmental interest of preventing "the secondary effects" of adult theaters such as neighborhood blight and the impediment of

community improvement efforts. (475 U.S. ___, ___, 89 L. Ed. 2d 29, 39-41, 106 S. Ct. 925, 931-35.) Finally, the court held that the ordinance allowed reasonable alternative avenues of communication because it left 520 acres of the city open for use as adult theater sites. 475 U.S. ___, ___, 89 L. Ed. 2d 29, 41-42, 106 S. Ct. 925, 938.

■ It is clear from *Playtime Theatres* that a local governmental unit may restrict the location of uses protected by the first amendment in a content-neutral zoning ordinance if it is narrowly designed to serve a substantial government interest and does not unreasonably limit alternative avenues of communication. And if a local governmental unit may prohibit such uses entirely in certain locations, the constitution does not prevent it from allowing exceptions to the prohibition in appropriate cases by means of a special-use permit. (See *Jeffrey Lauren Land Co. v. City of Livonia* (1982), 119 Mich. App. 682, 326 N.W.2d 604 (court upheld zoning ordinance which provided that in certain districts theaters were subject to waiver-use approval). Here Zebulon has not shown that the zoning ordinance banned mini-theaters without special-use approval throughout unincorporated Du Page County, but only in districts zoned B4. Moreover, Zebulon concedes that the ordinance was content neutral. The county asserts that its interest in this ordinance was the regulation of traffic and parking conditions ordinarily associated with recreation and amusement establishments. Judging the ordinance on its face, as we must in this proceeding, we cannot conclude that this interest was not substantial, or that the ordinance was not narrowly designed to serve such interest. Finally, because Zebulon has only shown that recreation and amusement establishments were prohibited without special-use approval in B4 districts, we cannot determine that the ordinance unreasonably limited alternative avenues of communication. Accordingly, the summary judgment in favor of Zebulon cannot be sustained on the basis that the ordinance was unconstitutional in classifying mini-theaters as a special use.

The cases relied on by Zebulon in this regard are distinguishable. In *County of Cook v. World Wide News Agency* (1981), 98 Ill. App. 3d 1094, 424 N.E.2d 1173, and *Entertainment Concepts, Inc., III v. Maciejewski* (7th Cir. 1980), 631 F.2d 497, *cert. denied* (1981), 450 U.S. 919, 67 L. Ed. 2d 346, 101 S. Ct. 1366, the ordinances at issue prohibited the operation of adult theaters or mini-theaters without special-use approval throughout the local governmental unit. The courts properly concluded in those cases that such broad restrictions on first amendment freedoms were greater than necessary for furtherance of the governmental interest involved. *County of Cook v. World Wide*

*News Agency* (1981), 98 Ill. App. 3d 1094, 1099, 424 N.E.2d 1173; *Entertainment Concepts, Inc. III v. Maciejewski* (7th Cir. 1980), 631 F.2d 497, 504.

■ Zebulon also maintains that the ordinance was unconstitutional because it did not include the procedural safeguards required for governmental censorship of obscene motion pictures. In *Freedman v. Maryland* (1965), 380 U.S. 51, 13 L. Ed. 2d 649, 85 S. Ct. 734, the court set forth the following constitutional requirements for a system of such censorship: (1) the burden of instituting judicial proceedings to suppress a film, and of proving that it is not protected by the first amendment, must rest on the government; (2) any restraint imposed prior to final judicial determination must be for the shortest fixed period compatible with sound judicial resolution, and (3) the procedure must assure a prompt final judicial decision. (See also *Southland News Co. v. Illinois* (1986), 143 Ill. App. 3d 971, 493 N.E.2d 398.) We fail to see how these procedural safeguards are at all relevant here. The zoning ordinance at issue was not a censorship system. It was a content-neutral time, place, and manner restriction. Such restrictions may be imposed without judicial proceedings and need not be limited to materials not protected by the first amendment. (*City of Renton v. Playtime Theatres, Inc.* (1986), 475 U.S. ___, 89 L. Ed. 2d 29, 106 S. Ct. 925.) The standards set forth in *Freedman* simply have no relevance to the zoning ordinance at issue here.

Zebulon's final argument is that the ordinance, insofar as it regulated mini-theaters, violated the first amendment because it did not have sufficiently narrow, objective and definite standards to guide the county board in deciding whether to allow the special use. We agree with this contention. In *Shuttlesworth v. City of Birmingham* (1969), 394 U.S. 147, 22 L. Ed. 2d 162, 89 S. Ct. 935, the court held that a city ordinance which established a permit requirement for parades, processions, and demonstrations violated the first amendment because it did not include narrow, objective, and definite standards to guide the licensing authority. Without such standards a permit requirement affecting first amendment rights would give the government the power to discriminate on the basis of the content of the communication through selective enforcement. (*Little v. City of Greenfield* (E.D. Wis. 1983), 575 F. Supp. 656.) The ordinance here contained no standards to guide the county board in deciding whether to issue a special-use permit. Our supreme court, in considering this same ordinance, held that it required the county board only to "weigh the desirability of the proposed [special] use against its potential adverse impact." (*Kotrich v. County of Du Page* (1960), 19 Ill. 2d 181, 187, 166 N.E.2d

601, *appeal dismissed* (1960), 364 U.S. 475, 5 L. Ed. 2d 221, 81 S. Ct. 243.) This broad discretion, while permissible in the realm of economic regulation, is unconstitutional where freedom of speech is at stake. See *Little v. City of Greenfield* (E.D. Wis. 1983), 575 F. Supp. 656.

■ The county argues that because the county board is a legislative body, as opposed to an administrative agency, narrow, objective, and definite standards were not required. The only authority it cites in this regard is *Kotrich*. In that case, however, the first amendment was not implicated. The special-use requirement of the Du Page County zoning ordinance was being applied to proposed tennis courts and a swimming pool. In the context of a permit requirement affecting the exercise of first amendment freedoms, narrow, objective, and definite standards have been required even where the decision on whether to issue the permit is made by a legislative body. (*County of Cook v. World Wide News Agency* (1981), 98 Ill. App. 3d 1094, 1099, 424 N.E.2d 1173.) Because the zoning ordinance did not include sufficiently narrow, objective, and definite standards to guide the county board in deciding whether to permit a mini-theater in a B4 district, it was unconstitutional and could not have been applied against Zebulon. Accordingly, Zebulon may continue its business under the "grandfather" provision of the ordinance as amended.

For the foregoing reasons the judgment of the circuit court of Du Page County is affirmed.

Affirmed.

HOPF and LINDBERG, JJ., concur.