REID M. PAXSON, Mayor of the City of Northlake, *et al.*, Plaintiffs-Appellants, v. THE BOARD OF EDUCATION OF SCHOOL DISTRICT NO. 87 *et al.*, Defendants-Appellees.

First District (5th Division)   No. 1—94—4294

Opinion filed December 8, 1995.

Samuel V.P. Banks, Robert J. Weber, and Anne T. Bottini, all of Chicago, for appellants.

Robert H. Ellch and John M. Izzo, both of Scariano, Kula, Ellch & Himes, Chartered, of Chicago Heights, for appellees.

JUSTICE T. O'BRIEN delivered the opinion of the court:
Plaintiffs, the City of Northlake and its mayor, filed a one-count complaint against the Board of Education of School District No. 87 (School Board) and its various board members. Plaintiffs sought injunctive and declaratory relief under the Illinois Open Meetings Act (Act) (5 ILCS 120/1 *et seq.* (West 1992)). The circuit court dismissed plaintiffs' action with prejudice on the grounds that (i) plaintiffs lacked standing, and (ii) plaintiffs did not file their complaint within the 45-day period of limitations set forth in the Act. We affirm the order of dismissal on the basis of the late filing.

## BACKGROUND

Because the circuit court dismissed the complaint pursuant to section 2—615 of the Code of Civil Procedure (735 ILCS 5/2—615 (West 1992)), the factually competent allegations in the complaint are taken as true.

On November 18, 1993, the mayor of Northlake issued a letter to the School Board regarding, in part, the City of Northlake's tax increment financing. The letter was sent in response to comments made by a board member, Jeffrey Storck, which were published in a local newspaper. Storck apparently suggested that School District No. 87 suffered a loss of revenue as a result of the City of Northlake's financing. In the letter, the mayor indicated that not only had the school district not lost any revenue on account of the city's tax increment financing, but that, in fact, the City of Northlake had enacted certain ordinances which resulted in a net increase in school funding.

In a second letter, dated January 10, 1993, the mayor questioned the propriety of the School Board's approval of a staff seminar held in San Francisco, California. The mayor believed that the City of Northlake was "footing the bill" for the trip because the city provided the School District with monetary incentives for other expenditures. He then requested an explanation as to why, among other things, "staff seminars cannot be kept local, and why the City should not discontinue providing the District with these monetary incentives until the District can assure the City that its dollars will be

spent on the children of the District, and not on the people of San Francisco."

The complaint further alleges that the School Board held a regular meeting at its administrative office on January 24, 1994. At the conclusion of the regular meeting, a member of the board moved to recess to a closed executive session in order "to consider information regarding appointment, employment [or] dismissal of an employee or officer." The motion carried.

During the closed meeting, board members discussed the mayor's letters and decided upon a course of action. The School Board agreed to send the mayor and city aldermen a written reply addressing the issues raised by the mayor.

Shortly thereafter, Peg O'Connell, the School Board president, issued the written reply. In her letter, O'Connell responded to each of the points raised by the mayor, including the tax increment financing, city ordinances and the out-of-State seminar. As to this last issue, O'Connell explained that "the information and expertise gleaned from nationally prominent experts in the field of education at a national conference translate into improved learning programs and procedures in our district which, in turn, directly impact on the quality of education this district can offer its students." A copy of the letter was delivered to the Press Publication Newsletter.

On April 29, 1994, plaintiffs notified the "Illinois [sic] State's Attorney" of the closed meeting and on that same day filed the instant complaint. Plaintiffs claimed that the aforementioned actions of the School Board during the closed session did not concern "information regarding appointment, employment [or] dismissal of an employee or officer" and therefore violated the Illinois Open Meetings Act. (5 ILCS 120/1 et seq. (West 1992).) In their prayer for relief, plaintiffs requested the court to (i) enjoin the School Board from future violations of the Act, (ii) declare null and void the School Board's actions in discussing and approving the response letter, (iii) direct the School Board to issue the appropriate recantation to be released to the Press Publication Newspaper, and (iv) assess attorney fees and costs.

Defendants thereafter moved to dismiss the complaint under section 2—615 of the Code of Civil Procedure, arguing that plaintiffs lacked standing under the Act and that the complaint was not filed within 45 days of the meeting. The court granted the motion to dismiss with prejudice.[1]

On appeal, plaintiffs submit that they do have standing and that

---

[1]The order of dismissal does not indicate the basis upon which the circuit court granted defendants' motion to dismiss. Nor does the record on appeal

they timely filed their action. They further assert that the circuit court should not have dismissed their complaint under section 2—615; rather, because standing and "statute of limitations" constitute affirmative defenses, defendants should have filed a section 2—619 motion to dismiss. (735 ILCS 5/2—619(a)(5) (West 1992).) For these reasons, plaintiffs seek a reversal of the circuit court's order of dismissal.

We agree with plaintiff in part and reverse the circuit court with regard to standing; nevertheless, we affirm the circuit court with regard to the late filing and therefore affirm the order of dismissal.

## ANALYSIS

■ The Illinois Open Meetings Act mandates that all meetings of public bodies must be open to the public, subject to certain enumerated exceptions not relevant here.[2] (5 ILCS 120/3 (West 1992).) In order to ensure compliance, the Act provides in pertinent part:

> "Where the provisions of this Act are not complied with, or where there is probable cause to believe that the provisions of this Act will not be complied with, *any person, including the State's Attorney of the county in which such noncompliance may occur,* may bring a civil action in the circuit court for the judicial circuit in which the alleged noncompliance has occurred or is about to occur, or in which the affected public body has its principal office, prior to or within 45 days after the meeting alleged to be in violation of this Act or within 45 days of the discovery of a violation by the State's Attorney." (Emphasis added.) 5 ILCS 120/3 (West 1992).

At issue here is whether the phrase "any person, including the State's Attorney of the county in which such noncompliance may oc-

---

contain a transcript of a hearing, if, in fact, the circuit court entertained oral argument. However, the parties addressed both substantive issues in their briefs before this court, and therefore we shall assume that the circuit court granted the motion upon each of the reasons raised by defendants.

[2]For purposes of the Act, " '[p]ublic body' includes all legislative, executive, administrative or advisory bodies of the state, counties, townships, cities, villages, incorporated towns, school districts and all other municipal corporations, boards, bureaus, committees or commissions of this State, and any subsidiary bodies of any of the foregoing including but not limited to committees and subcommittees which are supported in whole or in part by tax revenue, or which expend tax revenue, except the General Assembly and committees or commissions thereof." 5 ILCS 120/1.02 (West 1992).

"Meetings" are defined in the Act as "any gathering of a majority of a quorum of the members of a public body held for the purpose of discussing public business." 5 ILCS 120/1.02 (West 1992).

cur," authorizes a municipality or a public official, or both, to file a civil suit to enforce compliance with the Act. This is a matter of first impression.

The fundamental objective in construing the Act is to ascertain and give effect to the intent of the legislature. (*Kraft, Inc. v. Edgar* (1980), 138 Ill. 2d 178, 189, 561 N.E.2d 656.) Ordinarily, the language used in the statute is the primary source for determining this intent. (*People v. Markovich* (1990), 195 Ill. App. 3d 999, 1004, 552 N.E.2d 1232.) Absent statutory definitions indicating a contrary intent, words in a statute are to be given their ordinary and popularly understood meaning. *People ex rel. Daley v. Datacom Systems Corp.* (1991), 146 Ill. 2d 1, 15, 585 N.E.2d 51.

In this case, although the Act specifically defines "meetings" and "public bodies" (5 ILCS 120/1.02 (West 1992)), the word "person" is not defined. We do note, however, that the Illinois Statute on Statutes specifies that a " '[p]erson' or 'persons' as well as all words referring to or importing persons, *may* extend and be applied to bodies politic and corporate as well as individuals." (Emphasis added.) (5 ILCS 70/1.05 (West 1992).) Unfortunately, the Statute on Statutes does not require a mandatory application of its definition; therefore, it is not conclusive as to whether a municipality or public official is a "person" for purposes of the Open Meetings Act. We turn, then, to the legislature's intent and consider the use of the word "person" in light of the Act's objectives.

■ The Illinois General Assembly adopted the Open Meetings Act in 1957 as a compromise between the expediency of having public officials meet privately and the people's right of access to public information. (Ill. Rev. Stat. 1957, ch. 102, par. 41 *et seq.* (Illinois Meetings of Public Agencies Act).) As the court explained in *People ex rel. Hopf v. Barger* (1975), 30 Ill. App. 3d 525, 536, 332 N.E.2d 649, "[t]he people's access to information is the basis of public understanding of governmental decisions so that their elected representatives will be responsive to them and under their ultimate control. But disclosure of all forms of information preliminary to decision-making may prevent the efficient administration of governmental functions and thus adversely affect the public interest. The balancing of these countervailing factors is the basic problem." See also *Gosnell v. Hogan* (1989), 179 Ill. App. 3d 161, 171-73, 534 N.E.2d 434, *appeal denied* (1989), 126 Ill. 2d 558, 541 N.E.2d 1106.

Against this backdrop, the legislature carefully drafted the Act which, as its name suggests, grants the public the opportunity to scrutinize the actions and deliberative processes of certain public bodies. The General Assembly itself set forth the public policy behind the Act when it stated:

"It is the public policy of this State that the public commissions, committees, boards and councils and the other public agencies in this State exist to aid in the conduct of the people's business. It is the intent of this Act that their actions be taken openly and that their deliberations be conducted openly." 5 ILCS 120/1 (West 1992).

Thus, the express purpose of the Act is to require public bodies to deliberate and act openly. (*People ex rel. Hartigan v. Illinois Commerce Comm'n* (1985), 131 Ill. App. 3d 376, 378, 475 N.E.2d 635.) Consistent with that purpose, we find no compelling reasons to limit the word "person" to an individual as opposed to a body politic. Indeed, creating an impediment to the explicit command of the statute that actions of public bodies be taken openly, solely on the basis that a political body is not an individual person, ill serves the intent of the legislature and frustrates the principles underlying the Act. The deterrence of official misconduct is no less important simply because it is the office of the mayor which challenges the infraction rather than the mayor in his or her individual capacity.

Moreover, there may be instances where a purported transgression of the Act affects the interests peculiar to the political body and not the individual constituents. On the other hand, there may be instances where the actions taken at closed meetings affect the constituents indirectly, and thus they may be either unaware of the violations or without enough interest to institute a civil action. In each of these cases, it is unlikely that the allegedly improper meeting will be challenged by anyone other than the holder of the particular office, whose duty may be to safeguard against, or to respond to, the improper actions. As an example, we need look no further than to the case at hand.

■ In this case, the purported violation of the Act occurred when members of the School Board met in a closed executive session and decided to send a written reply to the mayor. In its reply, the School Board questioned the mayor about the City of Northlake's tax increment financing scheme:

"How are the tax increment monies being utilized by the City of Northlake for the following T.I.F. [tax increment financing] districts: North Avenue and Railroad, North Avenue and Wolf, and North Avenue and 46th?"

In regard to the city ordinances, the School Board asked:

"Do other school districts serving the students of Northlake receive monetary incentives from the City of Northlake? If so, would you please send us copies of the ordinances or resolutions that established these incentives?"

Finally, as to the out-of-State conference, the School Board wrote:

"Do you also monitor the participation of School District No. 21 or School District No. 83 staff members or School Board Members in national educational conferences? Have they also been notified by the City of Northlake that their participation in educational conferences should be restricted to the local level?"

As the above excerpts demonstrate, the School Board's written reply raises matters which relate directly to the mayor in his official capacity as the elected representative of the citizens of Northlake. Clearly, the reply calls upon the mayor to answer the School Board's "questions" concerning the utilization of tax increment funds, the enactment of certain ordinances, and the oversight of staff conferences. Consequently, it is unlikely that any particular citizen of Northlake, to the extent that he or she even knows about the closed meeting, would institute legal proceedings to declare the reply null and void.[3]

In addition, the reply appears in the form of an official response to the mayor. Common sense suggests that it is unlikely that an individual constituent would review each official correspondence sent to the mayor's office in order to ferret out whether the correspondence is the improper byproduct of a closed meeting. It is even more unlikely that such a person would then file suit.

As a result, were we to deny the mayor, or for that matter the City of Northlake, an opportunity to challenge the reply, and instead hold that only an individual person has standing under the Act, we would effectively insulate the School Board's actions from review. In short, we would undermine the very goals sought to be accomplished by the Act.

Defendants contend, however, that a "more logical reading of this provision [*i.e.,* 'any person, including the State's Attorney of the county in which such noncompliance may occur'] is that the *one* State's Attorney expressly authorized to file suit is the *only* public

---

[3]Perhaps this explains why the courts in Illinois have previously reviewed cases where bodies politic have sued under the Act. (See, *e.g., Board of Education of Community Unit School District No. 337 v. Board of Education of Community Unit School District No. 338* (1995), 269 Ill. App. 3d 1020, 647 N.E.2d 1019; *Bromberek School District No. 65 v. Sanders* (1988), 174 Ill. App. 3d 301, 528 N.E.2d 1336, *appeal denied* (1989), 124 Ill. 2d 553, 535 N.E.2d 912; *Board of Education of Community Unit School District No. 300 v. County Board of School Trustees* (1978), 60 Ill. App. 3d 415, 376 N.E.2d 1054.) However, the issue of standing was not raised in any of these cases; hence, they offer little by way of precedence in resolving the matter before this court.

body or public official authorized to file suit." (Emphasis in original.) Defendants apparently advance the proposition founded upon the maxim *expressio unius est exclusio alterius,* or, the expression of one thing is the exclusion of another. We find defendants' argument unpersuasive.

In *Zebulon Enterprises, Inc. v. County of Du Page* (1986), 146 Ill. App. 3d 515, 496 N.E.2d 1256, the court had occasion to consider the use of the word "including" in a zoning ordinance that set forth certain categories of special uses for recreation and amusement establishments. The County of Du Page charged the operator of an adult video and book store with violating the ordinance. Specifically, the ordinance required special use permits for the following:

" 'Recreation and amusement establishments; including archery ranges, bowling alleys, pool halls, dance halls, gymnasiums, swimming pools, skating rinks, golf driving ranges, miniature golf courses, miniature railroads, merry-go-rounds and other mechanical rides.' " 146 Ill. App. 3d at 518.

The store operator argued that "the word 'including' should be construed as a term of limitation on the antecedent general classification." (146 Ill. App. 3d at 519.) In rejecting such an argument, the *Zebulon* court noted that "[t]he term 'include' does not necessarily imply the exclusion of items not specifically enumerated. In fact, the weight of authority ordinarily interprets 'include' as a term of enlargement." (*Zebulon Enterprises,* 146 Ill. App. 3d at 519, citing *People v. Valley Steel Products, Inc.* (1978), 71 Ill. 2d 408, 419, 375 N.E.2d 1297; *Greyhound Lines, Inc. v. City of Chicago* (1974), 24 Ill. App. 3d 718, 727-28, 321 N.E.2d 293; *People v. Hall* (1964), 55 Ill. App. 2d 255, 204 N.E.2d 473.) Finding no reason to depart from the general rule, the court concluded that the word "including" was merely used to preface illustrative examples of the general classification of recreation and amusement establishments.

We, too, find the word "including," in its most commonly understood meaning, to be a term of enlargement, not of limitation. (*Greyhound Lines, Inc. v. City of Chicago* (1974), 24 Ill. App. 3d 718, 727-28, 321 N.E.2d 293.) Thus, the fact that the Act qualifies the word "person" as including the "State's Attorney of the county in which such noncompliance may occur" does not mandate defendants' conclusion that the inclusion of one body politic is to the exclusion of all others.[4] Here, the inclusion of the State's Attorney merely recognizes that the State's Attorney is the one public official who may

---

[4]Accord *Schwab v. Ariyoshi* (1977), 58 Haw. 25, 35, 564 P.2d 135, 141 ("[a] statutory definition of a thing as 'including' certain things does not

commence and prosecute suits on behalf of the people of the State of Illinois. (55 ILCS 5/3—9005 (West 1992).) Such a construction of the term is proper despite the maxim *expressio unius est exclusio alterius*. In fact, it is generally improper to conclude that entities not specifically enumerated are excluded when the legislature uses the word "including." (See 2A N. Singer, Sutherland on Statutory Construction §47.23 (5th ed. 1992).) Moreover, the maxim *expressio unius est exclusio alterius* is only a rule of construction and not a rule of law and should never be applied to defeat the purpose of a statute. *Greyhound Lines, Inc. v. City of Chicago* (1974), 24 Ill. App. 3d 718, 727, 321 N.E.2d 293.

Accordingly, we hold that the City of Northlake and its mayor have standing under the Act to challenge the propriety of the School Board's meeting of January 24, 1995.

■ We next address whether plaintiffs have filed their complaint in timely fashion. As with standing, this issue turns on section 3 of the Illinois Open Meetings Act. In particular, as of the time plaintiffs filed suit, the Act stated in relevant part:

> "Where the provisions of this Act are not complied with, or where there is probable cause to believe that the provisions of this Act will not be complied with, any person, including the State's Attorney of the County in which such noncompliance may occur, may bring a civil action *** *prior to or within 45 days after the meeting alleged to be in violation of this Act or within 45 days of the discovery of a violation by the State's Attorney*." (Emphasis added.) 5 ILCS 120/3 (West 1992).

■ Since plaintiffs' complaint was filed on April 29, 1994, more than 45 days after the meeting, the sole issue here is whether persons other than the State's Attorney may bring an action within 45 days of the State's Attorney's discovery of a violation of the Act. Relying almost entirely on *Safanda v. Zoning Board of Appeals* (1990), 203 Ill. App. 3d 687, 561 N.E.2d 412, *appeal denied* (1991), 136 Ill. 2d 554, 567 N.E.2d 342, plaintiffs contend that the "plain language does not measure the opportunity to file from the time of the complainant's discovery, but from the time of discovery by the State's Attorney." We agree with plaintiffs' general statement that the statute speaks in terms of a discovery of a violation by the State's Attorney; however, we find that the "discovery rule" inures only to the benefit

---

necessarily impose a meaning limited to the inclusion"), citing *People v. Western Air Lines, Inc.* (1954), 42 Cal. 2d 621, 638-39, 268 P.2d 723, 733; *United States v. Gertz* (9th Cir. 1957), 249 F.2d 662.

of the State's Attorney and is inapplicable to the instant case. We therefore respectfully decline to follow *Safanda.*[5]

In *Safanda*, plaintiff, a private individual, filed suit pursuant to the Open Meetings Act more than 194 days after the meeting alleged to be in violation of the Act. The circuit court held that action was not timely filed. On appeal, the Second District Appellate Court reversed and held:

> "The statute allows a person to file a complaint within three time periods: (1) before the violative meeting is held; (2) within 45 days of the violation; or (3) within 45 days of discovery of the violation by the State's Attorney. In the case before us, plaintiff filed her complaint 194 days after the Board's allegedly violative meeting, clearly beyond the limits of the first two periods. However, the record contains no evidence that the State's Attorney ever discovered the occurrence of the meeting.[6] Therefore, the 45-day period after such discovery had not run, and plaintiff's complaint was filed within the statutory time limit." *Safanda*, 203 Ill. App. 3d at 690-91.

Contrary to the court in *Safanda*, we find that the plain language of the Act requires persons other than the State's Attorney to file suit either prior to or within 45 days of the meeting. If, as contemplated by plaintiffs, any person could file suit as late as 45 days after the State's Attorney's discovery of a violation of the Act, then the 45-day limitations period from the date of the meeting is rendered superfluous. In other words, it is illogical for the legislature to provide a period of limitations which is either 45 days from the date of the meeting or 45 days from the date of the discovery of a violation by the State's Attorney, unless the legislature intended the two periods to apply to two different entities, *i.e.*, the office of the State's Attorney and all other persons. It is illogical because the 45-day period from the date of discovery of a violation by the State's Attorney is always at least equal to, but in no event less than, the 45-day period from the date of the meeting. The former period of limitations subsumes the latter.

---

[5]The fact that the Illinois Supreme Court denied leave to appeal in *Safanda* carries "no connotation of approval or disapproval of the appellate court action, and signif[ies] only that four members of [the supreme] court, for reasons satisfactory to them, have not voted to grant leave." *People v. Vance* (1979), 76 Ill. 2d 171, 183, 390 N.E.2d 867.

[6]Although it is not dispositive of the issue, we do note that the *Safanda* court incorrectly considered the discovery of the "*occurrence*" of the meeting as controlling, rather than the discovery of a "*violation*" of the Act. See 5 ILCS 120/3 (West 1992).

On the other hand, if the Act is properly read as limiting the effect of the "discovery rule" to the State's Attorney, the 45-day limitations period from the date of the meeting is not rendered superfluous. Only then does the language of the Act become sensible. Rules of statutory construction provide that where the language of a statute admits of two constructions, one of which would make the enactment absurd and illogical, while the other renders it reasonable and sensible, that construction which leads to the absurd result must be avoided. (*People v. Stanciel* (1992), 153 Ill. 2d 218, 233-34, 606 N.E.2d 1201.) In this case, we decline to countenance an absurd result and, consequently, find that under the plain language of the Act the discovery rule inures only to the benefit of the State's Attorney.[7]

Moreover, in holding that all persons other than the State's Attorney must file within 45 days of the meeting, and not within 45 days of a discovery of a violation by the State's Attorney, we fulfil the legislature's *express* intent in enacting section 3. (5 ILCS 120/3 (West 1992).) The prior version of the Act did not contain the phrase "or within 45 days of the discovery of a violation by the State's Attorney." (Ill. Rev. Stat. 1987, ch. 102, par. 43.) During the House Debates in the Illinois General Assembly, Representative McCraken offered floor amendment No. 1 to House Bill 2004, a bill to amend the Open Meetings Act. Representative McCraken stated, in part, "[a]mendment #1 deletes the underlying Bill and amends the Open Meetings Act in three respects. *** [I]n addition [it] extends the time in which the States [sic] Attorney may bring an action for violation of the Act to the greater of the current limitation or 45 days within the discovery thereof by the States [sic] Attorney." In light of Representative McCraken's floor comments, as well as the subsequent adoption of amendment No. 1, it is beyond dispute that the legislature intended the newly added language "or within 45 days of the discovery of a violation by the State's Attorney" to apply only in favor of the State's Attorney.

We acknowledge, of course, that persons other than the State's Attorney have a very short and definite period of time in which to bring a civil action. However, we also note that one of the remedies for a violation of the Act is the nullification of any action taken at

---

[7]There are at least two reasons—in addition to the language of the statute—why the State's Attorney alone should enjoy the equitable tolling of the limitation period until his or her discovery of a violation. First, it is doubtful that the State's Attorney will be immediately aware of each and every meeting that does not comply with the requirements of the Act. Second, as previously noted, the State's Attorney is authorized by statute to sue on behalf of all the people in this State. 55 ILCS 5/3—9005 (West 1992).

the meeting. (5 ILCS 120/3(c) (West 1992).) The voidance of governmental actions is indeed a powerful and drastic remedy that carries with it the enormous potential for upsetting the stability of government. Consequently, we find that the restriction placed on the remedy is more than reasonable.

In addition, nothing prohibits a person who is aggrieved by an allegedly improper action from notifying the State's Attorney even after 45 days of the meeting and requesting the State's Attorney to file suit *ex relatione,* or upon relation.[8] On the other hand, to allow that same person to file suit in his or her own name solely upon notification to the State's Attorney would, no doubt, condone dilatory practices. In fact, it would confer upon persons other than the State's Attorney the opportunity to delay filing an action *ad infinitum* by simply not notifying the State's Attorney of the alleged violation until some future date.[9]

Finally, despite the fact that plaintiffs may have relied upon *Safanda* in regard to the period of time in which to file their cause of action, we, as an intermediate court of review, have no authority to apply our decision prospectively. "[O]nly the supreme court has the inherent power to make rulings prospective or retroactive." *Hahn v. Norfolk & Western Ry. Co.* (1993), 241 Ill. App. 3d 97, 103, 608 N.E.2d 683, *appeal denied* (1993), 151 Ill. 2d 563, 616 N.E.2d 333.

For these reasons, we hold that any person other than the State's Attorney must file suit prior to or within 45 days of the meeting alleged to be in violation of the Open Meetings Act.

■ Regardless of the foregoing analysis, plaintiffs argue that the circuit court should not have dismissed their complaint under section 2—615 since standing and "statute of limitations" are affirmative defenses. (See *Greer v. Illinois Housing Development Authority* (1988), 122 Ill. 2d 462, 524 N.E.2d 561 (lack of standing is an affirmative defense); *In re Joseph B.* (1994), 258 Ill. App. 3d 954, 630 N.E.2d 1180 (statute of limitations is an affirmative defense).) However, plaintiffs themselves pled the very facts upon which defendants attack the

---

[8]This assumes, of course, that the State's Attorney has not had notice of a violation of the Act within the previous 45 days and has in the exercise of his discretion elected not to file suit.

[9]We note that plaintiffs have not cited a single case which has made the equitable tolling of a limitations period contingent upon the "discovery" by a third party, particularly where the third party is not a party to the litigation. This is not surprising, since the "discovery rule" is intended to mitigate the harsh result which may occur where a *plaintiff*—not some third party— fails to discover all of the elements of his or her cause of action prior to the expiration of a statute of limitations.

complaint, and thus the only issue is whether under the facts alleged plaintiffs' cause of action is barred as a matter of law. (See, *e.g., Lissner v. Michael Reese Hospital & Medical Center* (1989), 182 Ill. App. 3d 196, 206, 537 N.E.2d 1002 (statute of limitations is an affirmative defense unless it appears from the face of the complaint that the cause of action is legally barred).) Moreover, plaintiffs suffered no prejudice in this case because the circuit court did not consider any affidavits, documents (other than those which were attached to the complaint and incorporated therein), testimony or other evidentiary materials. In fact, the circuit court merely construed a statute in light of plaintiffs' own allegations. Construction of a statute is a question of law. *O'Neill v. Brown* (1993), 242 Ill. App. 3d 334, 339, 609 N.E.2d 835.

More important, however, plaintiffs mischaracterize the statutory limitations period in this case as a general statute of limitations. It has long been the law of this State that where a person seeks relief under a cause of action which is wholly statutory in nature, that person must allege facts which clearly bring him or her within the prescribed requirements necessary to confer the right of action. (*Sharp v. Sharp* (1904), 213 Ill. 332, 72 N.E.2d 1058.) Furthermore, if the statute which gives rise to the cause of action also fixes a time period for commencing the action, then the prospective plaintiff must likewise affirmatively allege that he or she filed the complaint within the period of time allowed. (*Hartray v. Chicago Rys. Co.* (1919), 290 Ill. 85, 124 N.E.2d 849.) As the *Hartray* court noted, "[s]ince the right of action for death by wrongful act is wholly statutory and must be taken with all the conditions imposed upon it, the burden being upon the plaintiff to bring himself within the requirements of the statute, it is almost universally held that a provision in the statute creating the right, requiring an action thereon to be brought within a specified time, is more than an ordinary statute of limitations and goes to the existence of the right itself. It is a condition attached to the right to sue at all. [Citations.]" *Hartray*, 290 Ill. at 86.

The court in *Hartray* further explained that in these cases it is incumbent upon the plaintiff to state facts showing that the action is timely because "[u]nlike the general Statute of Limitations, this special statute creating the right and giving the remedy does not merely confer the privilege upon the defendant to interpose a definite time limitation as a bar to the enforcement of a distinct and independent liability, but it defines and limits the existence of the right itself." (*Hartray*, 290 Ill. at 87.) Thus, although the defendant must raise a general statute of limitations as an affirmative defense, "the reasoning that leads to that result as a matter of pleading has

no application when, as in this case, the statute confers upon the plaintiff a peculiar right which, if not exercised, ceases to exist by its own limitations." *Hartray*, 290 Ill. at 87.

In this case, the Open Meetings Act itself set forth the 45-day period of limitations, and thus the time in which to file is a condition of liability. Therefore, since plaintiffs' cause of action necessarily exists subject to that limitation, plaintiffs must allege that they have filed their suit within the prescribed period. As such, defendants may properly challenge this complaint on the basis of late filing pursuant to section 2—615 of the Code of Civil Procedure. (735 ILCS 5/2—615 (West 1992).) Accordingly, we assign no error to the circuit court's dismissal of plaintiffs' complaint with prejudice solely because defendants moved for dismissal under section 2—615.

For the foregoing reasons, we reverse the circuit court with regard to standing, affirm the circuit court with regard to the late filing, and therefore affirm the order of dismissal.

Reversed in part and affirmed in part.

COUSINS, P.J., and GORDON, J., concur.